Kimberly LOCK, Appellant,

v.

STATE of Indiana, Appellee.

No. 40S00–8806–CR–00536.

Supreme Court of Indiana.

March 21, 1991.

Gary K. Kemper, Jenner, Kemper & Auxler, Madison, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant Kimberly Lock was convicted by a jury of having committed the crimes of aiding murder and conspiracy to commit murder, both Class A felonies. She was sentenced to imprisonment for periods of 40 years and 30 years, respectively, to be served concurrently, and fined

$10,000 for each conviction. In her direct appeal she asks us to reverse these convictions because of the following alleged errors:

1. The trial court erred in allowing an allegedly incompetent, improperly-disclosed witness to testify concerning what she overheard in a telephone conversation between the victim and a third person;

2. The trial court erred in allowing hearsay evidence of conversations between non-party witnesses and the victim;

3. Prosecutorial misconduct in failing to provide allegedly exculpatory evidence;

4. The trial court erred in allowing defendant's testimony from her first trial to be introduced into evidence at the second trial;

5. The insufficiency of the evidence to support the verdicts; and

6. The impropriety of the court's imposing the $10,000 fines.

Having considered all of the arguments, we find that the trial court did not commit reversible error and that the convictions must be affirmed.

The facts of the case are that Raymond Lee Milano savagely bludgeoned the victim, Minnie Blanton, and burglarized her home in the early morning hours of August 15, 1985. Lock, the adopted daughter of the victim, was accused of hiring Milano and giving him a key and diagram of Blanton's house and otherwise aiding and conspiring with him to kill Blanton. The first trial resulted in a mistrial because of a hung jury. At the second trial, the jury basically had to choose to believe either the testimony of Milano or of Lock. The jury chose to believe Milano.

The facts, according to Milano's testimony, were that he and Lock had been acquainted since April 1984. She had previously purchased marijuana from Milano and, in late July 1985, she asked Milano if he knew someone who would take care of killing an elderly person with whom she was having trouble. Milano answered in the affirmative, and Lock drove him past Blanton's house and pointed it out as the house of the person whom she wanted killed. Milano asked her if that was her mother's house and wondered why she wanted her mother killed. Lock replied that there were troubles between them. Milano quoted her a price of between $800 and $1,000 to do the job and stated that he needed $125 "up front" to be able to contact people. Lock gave Milano a key and told him that it would fit the door of her mother's house.

Milano next saw Lock two days later when she came to his apartment and again talked of killing her mother, drawing a floor plan of the house for him. Lock gave Milano a $50 check as part of the $125 front money, and they agreed to a total price of $500 to be paid immediately following the killing. Lock told Milano that her mother was usually home every night after 5:30 p.m. Two days later, on August 2, 1985, Lock and Milano met again for an additional payment of $75 cash. Between that meeting and the morning of the murder, August 15, 1985, Lock and Milano did not converse or correspond.

At approximately 3 a.m. on August 15, 1985, following a night of heavy drinking, Milano walked to Blanton's house, used the key that Lock had given him, letting himself into the house, closing and locking the door behind him. Milano proceeded to subdue Blanton, forced her to open the safe in the house and then, using strips cut from the bedsheets, tied Blanton to the bed and gagged her. Milano then systematically burglarized the house and loaded the loot into Blanton's automobile. He then returned to the bedroom and repeatedly stabbed Blanton, ultimately slitting her throat and killing her. Milano fled in Blanton's automobile to Carrollton, Kentucky, where he telephoned Lock, told her of the murder, and demanded the remainder of his money. He later returned to Madison, Indiana, and received $200 cash in an envelope from Lock's mailbox. He left Madison, Indiana, was apprehended in Illinois, and was charged with murder.

Lock presented evidence that she and her mother were not "having trouble." She explained the monies that she had given to

Milano before the murder as being for the purchase of marijuana as well as payment to "rough up" a third person who had called her names and accused her of stealing a state park pass. She further testified that she had allowed her son to stay with Blanton throughout the period of time that Milano was supposedly hired to kill her mother, the inference being, of course, that she would not have done so had she hired Milano to kill her mother.

After hearing all of the evidence and being properly instructed, the jury deliberated and returned its verdict finding Lock guilty of aiding and conspiring to murder her mother.

## I. Competency, Propriety and Admissibility of Witness to Telephone Conversation

The State called as a witness a customer of Blanton's beauty shop who testified that on May 6, 1985, she was in the beauty shop when Blanton received a phone call. She further testified that Blanton held the receiver away from her ear so that the customer could overhear the conversation. She testified that she heard the voice on the other end screaming, demanding $500 and threatening not to bring the baby over any more if she didn't get the money. Additionally, she testified that she heard the voice on the other end of the line say, "I could kill you for that" or "could kill you." At the conclusion of the phone call, she observed Blanton crying, dabbing at her eyes with tissue, and taking a few minutes in the back room to compose herself.

■ Lock contends that this witness was incompetent because she had had mental illness problems requiring anti-depressant and anti-psychotic drug therapy. Secondly, she contends that the witness should not have been allowed to testify because the prosecutor did not make a timely disclosure of the identity of the witness and, thirdly, that the trial court committed error by allowing the witness to testify as to the contents of the telephone conversation. All three of these alleged errors involve areas where the trial judge is allowed wide latitude.

First, we have examined the transcript of the witness' treating physician and agree with the trial court that there was no evidence that would render her incompetent as a matter of law. Her credibility, or lack thereof, was properly explored on cross-examination and her testimony, therefore, was evaluated by the jury.

■ Secondly, Lock contends that the court erred in allowing this witness to testify because her name was not revealed to Lock or her attorneys in a timely fashion. We note simply that the witness was listed on the witness list approximately six months before the trial of this action. There has been no demonstration of any prejudice to Lock as a result of the alleged late notice of the identity of this witness.

■ Finally, Lock contends that there was a lack of foundation to show that she, Lock, was the speaker on the other end of the telephone during the conversation related by the witness. A caller's identity must be established as part of the foundation for the admission of the contents of a telephone call. *Ashley v. State* (1986), Ind., 493 N.E.2d 768, 774. However, the identity of the caller may be established by circumstantial evidence. *Reed v. State* (1986), Ind., 491 N.E.2d 182, 186. Evidence that the caller possessed knowledge of certain facts that only a particular person would possess is sufficient identification to satisfy the foundational requirement. *Reed v. State, supra.* In this case, the witness heard the caller demand $500 from Blanton and threaten that she would not bring the baby over any more if she didn't get the money. Given the evidence that Blanton frequently babysat for Lock's child, the jury could reasonably infer that Lock was the caller who demanded money and threatened not to bring the child over any more if she didn't get it. The foundational requirement was satisfied and the trial court properly admitted the evidence.

## II. Hearsay Conversations With Blanton

■ The State called Blanton's brother and sister who related, over objection, telephone conversations between them and

Blanton. Blanton's brother testified that he talked to her on the telephone at a time when she was upset because her daughter, Lock, had taken Blanton's housekey and had not returned it and that no one was supposed to have a key. In the same vein, Blanton's sister was allowed to testify about a telephone conversation which occurred on July 7th in which Blanton, in an excited, high-pitched voice, told her that Lock had failed to return her housekey and that she was concerned because she didn't "know what Kimberly will do next." The sister also was allowed to testify that Blanton told her of repeated instances of Lock's refusing to relate to Blanton by not answering the door and hanging up the telephone when Blanton called. Lock argues that this evidence constitutes inadmissible hearsay and violated her constitutional right to confront the witnesses against her. Lock contends that this evidence was purposefully used by the prosecutor to prove that Lock possessed the housekey which Milano testified she gave to him for entry into Blanton's house. The State answers this contention by submitting that the evidence was not offered for the truth of the matters contained within the statements, but was offered to show Blanton's state of mind prior to the crime as being one of fear of the defendant.

Our analysis is that the evidence clearly was hearsay in that it was testimony by a witness concerning an out-of-court declaration by a third person and was offered for the purpose of proving the facts asserted by the declarant. Such evidence ordinarily is not admissible because it deprives the defendant of the opportunity to cross examine the declaration and confront the declarant. *Skaggs v. State* (1966), 247 Ind. 639, 643, 220 N.E.2d 528, 530.

This Court in *Morse v. State* (1980), 274 Ind. 652, 655, 413 N.E.2d 885, 887, discussed the hearsay rule. In *Morse* the State's theory was that the defendant had lured her ex-husband to her home where she shot him, by telling him that his adopted son, Jimmy, had impliedly attempted suicide. The defendant, on the other hand, claimed that her ex-husband broke into her home intending to do bodily harm to their daughter because the daughter had made harassing telephone calls to the victim's home. Over objection, a witness who lived with the ex-husband testified that the ex-husband answered the telephone in the witness' presence and said, "Yes, I'll be right there." He hung up, turned around, and said, "Jimmy just tried to...." The witness further testified that he did not finish the sentence, but immediately put on his clothes and left. In determining that such testimony was admissible, we held that the statements of the victim were not offered for the truth of the matters they contained but were offered to show why the victim went to the defendant's home. We held, with citation to nine other jurisdictions, that such statements were admissible because they were indicative of a state of mind which circumstantially tended to controvert the claim of self defense. Therefore, the statement was not hearsay at all.

That holding has been enlarged upon to the point that we have held that statements offered to show the victim's state of mind prior to the crime are admissible. *Dunaway v. State* (1982), Ind., 440 N.E.2d 682, 686, and *Drummond v. State* (1984), Ind., 467 N.E.2d 742, 747. What has not been answered by the flat statements that such out-of-court declarations are admissible to show the victim's state of mind is whether a victim's state of mind is legally relevant. In the present case, however, we need not decide this issue because Blanton's telephonic declarations could serve two purposes. First, they tend to prove that Lock did, in fact, have a key to her mother's house and, secondly, as the State contends, they prove that the victim was fearful of the defendant. We must weigh the prejudicial effect of the admission of the statements for the former purpose against the value of the admission of the statements to the jury in proving the latter. We conclude that the latter purpose prevails because the out-of-court declarations here were offered to prove that Blanton was apprehensive and fearful and, generally "having trouble" with Lock. This, of course, was one of the contested issues

at trial. We believe that had Lock requested an admonishing instruction from the court to disregard the evidence from these witnesses as it related to the issue of whether or not Lock, in fact, had possession of the key, such request should have been given. No such request was made, however, and the failure of the trial court to *sua sponte* admonish the jury is not error. We find that the statements made by the victim were properly admitted to prove that the relationship between the daughter and the victim was not completely benign, contrary to Lock's assertions at trial.

### III. *Prosecutorial Misconduct*

 Lock asserts that she was denied a fair trial because the prosecutor failed to provide her or her attorneys with pathology slides showing that the victim had been killed with a serrated knife as opposed to the smooth-bladed knife testified to by Milano during the first trial and, further, by the prosecutor's suggesting to Milano that he change his testimony at the second trial to state that he slit Blanton's throat with a "sawing" motion in order to make his testimony compatible with the pathology slides. We have held that the State has a duty to divulge exculpatory evidence and that failure to divulge such evidence may result in sanctions by the trial court. *Rowan v. State* (1982), Ind., 431 N.E.2d 805, 819; *Davis v. State* (1986), Ind., 487 N.E.2d 817, 820. The appropriate remedy for a violation of this duty most often is the granting of a continuance to the defendant to allow the defendant time to prepare to meet the previously non-divulged evidence. In this case the record reveals that Lock did not object to the admission of the pathology slide in question or the pathologist's testimony on the grounds that it was not provided in discovery. Further, defendant did not request a continuance or request that the evidence be excluded because of the State's failure to provide such evidence to her pursuant to a discovery order in effect. By failing to raise the issue at trial, Lock cannot now raise such objection for the first time on appeal. *Van Cleave v. State* (1987), Ind., 517 N.E.2d 356, 372; *Lewis v.*

*State* (1987), Ind., 511 N.E.2d 1054. Additionally, everyone agreed that Milano did, in fact, kill the victim with a knife, regardless of whether the knife's blade was serrated or smooth. This issue was not at all relevant to the issue of Lock's guilt or innocence of the crimes charged, aiding and conspiring to murder. No error has been presented on this issue.

### IV. *Admissibility of Defendant's First Trial Testimony*

 Lock asserts that the trial court erred in allowing her testimony from the first trial to be introduced into evidence. The testimony related to her prior contact with Milano and her request to have him beat up a third person who had accused her of stealing a state park pass. Lock asserts that such former testimony is inadmissible because it violates her Fifth Amendment privilege against testifying. We disagree.

 Prior recorded testimony is admissible if the trial court finds that the testimony (1) was given under oath at a former judicial proceeding, (2) that the party against whom the testimony is now offered had the opportunity and motive to cross examine the witness at the prior proceeding, and (3) that the witness is unavailable at the time of the later proceeding. *Pollard v. State* (1979), 270 Ind. 599, 612, 388 N.E.2d 496, 506; *Bryant v. State* (1979), 270 Ind. 268, 385 N.E.2d 415. Clearly, the testimony at issue here would be admissible had anyone, other than the defendant, been the provider of such testimony. The issue in this case, therefore, is whether Lock, by testifying at the first trial, waived her Fifth Amendment privilege to not testify at the second trial. By testifying at the first trial Lock did not waive her Fifth Amendment privilege against testifying and could not have been compelled to testify at the second trial. *LaBine v. State* (1983), Ind., 447 N.E.2d 592, 595. However, her first-trial testimony is admissible at the second trial, in the same manner as a statement or admission against interest given prior to a trial is admissible at a later trial even if the defendant chooses not to testify at such trial. In

examining the evidence admitted over Fifth Amendment objections, we hold that such evidence was more properly rebuttal evidence that was received out of sequence, but the admission of such evidence did not violate Lock's constitutional protections and does not constitute error.

### V. *Sufficiency of the Evidence*

Lock contends that the evidence is not sufficient to support the convictions because Milano testified, in essence, that he killed Blanton because he feared that allowing her to live would lead to his arrest and conviction for the robbery and would subject him to being an habitual offender. Because of this testimony, defendant argues, the evidence is uncontroverted that Milano did not kill the victim in furtherance of an agreement with defendant. In order to prove a conspiracy to commit a felony, the State must prove that either the defendant or the person with whom the defendant conspired performed an overt act in furtherance of the agreement. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, 1002; *Komyatti v. State* (1986), Ind., 490 N.E.2d 279, 286. The evidence here is that the defendant requested and Milano agreed to commit the murder. In furtherance of that agreement, the defendant gave him money, a floor plan of her mother's house, and a key to the house. Milano subsequently killed the victim. A jury could properly find that both Milano and Lock performed overt acts in furtherance of the agreement; Lock by paying money and furnishing the floor plan and key to her mother's house, and Milano by killing Lock's mother. The evidence is sufficient to support the convictions.

### VI. *The Ten Thousand Dollar Fines*

Lock argues that the trial court erred in imposing $10,000 fines on each count because of her status as an indigent. When a fine is imposed upon an indigent, the trial court must expressly state that the defendant shall not be imprisoned for failing to pay the fine. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 296. The trial court did not so expressly state in its sentencing order. Pursuant to *Whitehead*, we hold that this matter should be remanded to the trial court to amend its sentencing order to state that Lock shall not be imprisoned for failing to pay the fines assessed.

For all of the above reasons, we affirm the convictions but remand to the trial court for the purpose of the trial court's amending its sentencing order to state that the defendant shall not be imprisoned for failing to pay the fines assessed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.