686 N.E.2d 791 (1997)
John R. BACHER, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 48S00-9503-CR-285.
Supreme Court of Indiana.
October 9, 1997.
*792 John M. Eisele, Anderson, for Appellant.
Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.
SULLIVAN, Justice.
On May 26, 1994, defendant John Bacher was charged with one count of Murder pursuant to Ind. Code § 35-42-1-1. On October 5, 1994, the jury found the defendant guilty of Murder. Sentencing defendant to a total executed term of sixty years, the trial judge imposed the presumptive forty year sentence plus a twenty year enhancement for aggravating circumstances. Defendant appeals his conviction and sentence. We affirm the conviction and remand the case to the trial court for a new sentencing hearing.

Background
On May 13, 1994, John R. Bacher (defendant) and Janet Odle (victim) were married. On May 20, 1994, victim filed a petition to annul her marriage and defendant signed an acknowledgment of service of petition. Early on the morning of May 21, 1994, defendant shot and killed victim. In a statement to the Anderson City Police, defendant stated that he and victim were arguing in the bedroom. According to defendant, victim grabbed a gun from the headboard of the bed and defendant struggled with victim for control of the weapon. Defendant asserted that he lost *793 his balance and the gun discharged. Evidence at trial would show, inter alia, that one bullet had been fired and that defendant had called the police immediately after the shooting. Defendant was charged with murder. The jury found defendant guilty and the trial court judge entered judgment of conviction.

Discussion
Defendant presents the following issues on review: (1) whether it was improper for the trial court to admit testimony and evidence in three respects; (2) whether it was improper for the trial court to admit evidence in the form of a paramedic's opinion as to the time of death; (3) whether it was improper for the trial court to fail to allow defendant's expert witness to testify regarding the characteristics of one afflicted by a traumatic or shocking event after the state placed defendant's demeanor at issue; and (4) whether the trial court abused its discretion by sentencing defendant to the maximum term of sixty years.

I
Defendant contends that the trial court improperly admitted testimony or evidence in three respects: (a) evidence involving an incident between defendant and an ex-boyfriend of the victim; (b) testimony of two witnesses to the effect that they feared for the safety of the victim before her death; and (c) evidence contained in a police report involving a handgun by which the victim was killed. The decision to admit evidence is within the sound discretion of the trial court and is afforded a great deal of deference on appeal. Tynes v. State, 650 N.E.2d 685, 687 (Ind.1995). Here we find ourselves particularly predisposed to defer to that discretion because of the obvious care with which the trial court considered defendant's objections to the admission of this and related testimony and evidence. Nevertheless, because the testimony and evidence was important and vigorously contested at trial, we give it careful review.

A
Defendant asserts that the trial court committed reversible error by admitting the testimony of Anderson police officer Dennis Adams that on May 19, 1994, he took a report of a missing handgun belonging to the victim. Defendant argues that such testimony was inadmissible hearsay.
The record indicates that on May 19, the victim reported to Officer Adams that her handgun was missing and that she thought defendant had taken it. The next day, the victim borrowed another gun from a co-worker, Albert Shuck. On May 21, the victim was killed by the gun she had reported missing two days earlier.
From the outset of the trial, defense counsel argued tenaciously and effectively against the admission of the report of the missing handgun. Arguing that the report was being offered by the state to prove that the victim's gun was missing and that defendant had taken it, defense counsel contended the report was inadmissible hearsay. Ind.Evidence Rule 801(c).[1] "The person who's making the allegations about the missing gun is dead. There's no way I can cross examine her," defense counsel argued. (R. at 280.)
Jury selection took the entire first day of the trial. At the outset of the second day, the trial court agreed with defense counsel and granted defendant's motion in limine restricting the state from offering evidence of the report of the missing gun. But that was not the end of the matter. Later that day, with the victim's daughter on the stand, the state sought relief from the motion in limine to ask the witness about the missing gun. The trial court denied the request on grounds that the testimony would be inadmissible hearsay. Still later the same day, the state attempted to call Officer Adams. Defense counsel and the prosecutor argued the admissibility of the report at length and responded to the court's questions concerning the applicability of Craig v. State, 630 N.E.2d 207 (Ind.1994).[2] Again the trial court *794 sustained the hearsay objection and the officer was not called.
The next witness was Mr. Shuck, the co-worker who had loaned the victim his handgun the day before her death. The following colloquy occurred (prosecutor questioning):
Q: How would you describe [the victim] as appearing the Thursday night before she got killed?
A: Real nervous.
. . .
Q: In any other way you can describe it?
A: She was very jumpy. She had a gun that was missing ...
DEFENSE COUNSEL: Your Honor, I'd ask that those remarks be stricken.
THE COURT: Okay. The jury will disregard the last remarks that the witness made. And he was not being responsive to the question. Would you restate the question?
Q: You understand, sir, that you can't ... we talked about this. And you know that you can't say things that she said.
A: Okay.
DEFENSE COUNSEL: Now, Your Honor, I'd like to argue a mistrial outside the presence of the jury.
(R. at 422.) The judge excused the jury and heard lengthy arguments on the motion for mistrial. While the judge denied the motion, he did admonish the jury to disregard the prosecutor's "last remark and/or question." However, Mr. Shuck was permitted to testify that he loaned the victim his gun.
At the start of the fourth day of the trial, the prosecutor began by asking for relief from the motion in limine. He advanced the following arguments. First, he argued that the report should be admissible under the business records exception to the hearsay rule. Second, he argued that the report was not being offered to prove the truth of the matter being asserted but instead to explain the victim's state of mind in borrowing the gun from Mr. Shuck.[3] The prosecutor advanced case law in support of both theories. Defense counsel easily distinguished the business records cases cited by the prosecutor.[4] She then turned to the "state of mind" argument and, after addressing the cases advanced by the state, concluded that the state wanted the report admitted "for one thing and one thing only and that is to prove the fact that [the victim] was not in possession of that gun on the evening of her death." (R. at 618.) After some discussion of whether the defendant's assertion that the shooting was an accident put the victim's state of mind at issue, the trial court took the issue under advisement.
The trial court began the fifth day of trial by announcing that it would admit Officer Adams's testimony that the victim's gun was missing. Over continued vigorous objection from defense counsel, the court indicated that the evidence was admissible "[t]o show the reason ... [the victim's] state of mind as to why she borrowed the gun from Mr. Shuck." (R. at 731) (ellipsis in original). However, Officer Adams was only permitted to testify that he had taken a report that the victim's handgun was missing. He did not testify that the victim had made the report or that she suspected that defendant had the gun. The entire extent of the testimony was as follows (prosecutor questioning):
Q: On ... Thursday, May the 19th, 1994, did you have occasion to take a report *795 of a missing handgun belong to Janet E. Odle, specifically a thirty-eight caliber Colt Cobra, serial or model number 80 ... 80489R?
A: Yes, sir.
Q: Okay.
PROSECUTOR: That's all we'd have.
CROSS EXAMINATION
QUESTIONS BY DEFENSE COUNSEL
Q: What were your hours that day, Dennis?
A: I was working I believe six a.m. to two p.m. I had been on the B schedule, but I think I was ... I think those were my hours.
Q: And did you take this report around twelve-thirty p.m. on that Thursday afternoon?
A: Yes.
DEFENSE COUNSEL: I have no other questions, Your Honor.
PROSECUTOR: Nothing further.
THE COURT: Thank you.
WITNESS EXCUSED
THE COURT: Ladies and gentlemen, this testimony of Mr. Adams is not being offered for the truth of the statement, but to show that he received a report of a missing gun.
(R. at 791-792.)
As noted above, we accord the trial court broad discretion in determining the admissibility of evidence and will not reverse its determination absent an abuse of that discretion. And even where we find error in the admission of evidence, we disregard it as harmless error unless it affects the substantial rights of a party. Ind.Trial Rule 61; Hardin v. State, 611 N.E.2d 123, 131 (Ind. 1993). An error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of a party. Fleener v. State, 656 N.E.2d 1140, 1142 (Ind.1995).
Here defense counsel was entirely successful in keeping from the jury the potentially most damaging aspect of the missing gun report, to wit, the victim's belief that defendant was responsible for the gun being missing. No evidence whatsoever on that point was introduced. Defense counsel was almost entirely successful in keeping from the jury the fact that the victim reported the gun missing. The colloquy between the prosecutor and Mr. Shuck was the only testimony that implied that the victim had reported her gun missing, testimony that the jury was immediately told to disregard. Officer Adams was only permitted to testify that he had received a report that the gun was missing; he did not testify as to the source of the report. And the judge immediately thereafter instructed the jury that the testimony had not been offered to prove that the gun was missing but only that Officer Adams had received the report.
Defendant argues that by admitting Officer Adams's testimony, the jury was permitted to speculate that defendant had made off with the victim's gun two days before she was killed by it. But after very careful study of all of the evidence in the case, we conclude that even if it was error to admit the testimony, the extremely limited amount of information actually presented, when combined with the court's admonishment of the jury, made the information's probable impact on the jury sufficiently minor so as not to affect the substantial rights of the defendant.

B
Defendant contends that the trial court committed reversible error by admitting the testimony of two witnesses to the effect that they feared for the victim's safety in the days and hours prior to her death. The state disagrees and argues that the testimony is admissible as part of the res gestae of the crime.[5] Furthermore, the state argues that defendant cannot show that he was prejudiced by the challenged testimony.
*796 Dawn Angela Colip, the victim's adult daughter, was the state's first witness. Prior to her testimony before the jury, the prosecutor, defense counsel, and Colip appeared before the judge to consider certain defense motions. After hearing her prospective testimony concerning the disappearance of the victim's handgun shortly before her death (discussed at length in section A, supra) and alleged lies by the defendant about his background, the trial court prohibited the state from eliciting testimony from Colip on either the handgun or the lies.
During Colip's testimony before the jury, the following colloquy occurred (prosecutor questioning):
Q: Was there a time during that week that you tried to get your mother to stay with you?
A: Yes.
Q: And when was that?
A: Thursday evening before she was killed.
Q: Okay. And why was it that you wanted your mother to stay with you?
(R. at 347.) At this point, defense counsel interrupted, saying, "Your Honor, I don't know where we're headed with this testimony. And it would appear to me that maybe it is something that is clearly not admissible." The judge excused the jury and the prosecutor and the witness proffered the following prospective testimony (prosecutor questioning):
Q: Why was it that you wanted your mother to stay with you, Angie?
A: I was afraid for her.
Q: You were concerned about her safety.
A: Yes.
(R. at 348.) The prosecutor indicated that would be the extent of the questioning. Defense counsel objected to this questioning. "Your Honor, what they force me to do is ask, `Well, why?' and all of a sudden, we have opened up everything that you just ruled on as inadmissible because then we get into the conversation of the missing gun, the lies and everything else. This is just a way to come around through the back door and stab us, is what they're doing." (R. at 348-349.) The trial court overruled the objection without further comment. Colip then testified as proposed.
Later, Angela Jean Manis, a co-worker of the victim, testified. The following colloquy occurred (prosecutor questioning):
Q: Did you say anything to her regarding where she should stay that night?
A: Yes.
Q: What did you say to her?
A: I offered her to stay at my house that evening.
Q: Why did you do that?
(R. at 461.) Defense counsel interrupted at that point, saying that she was not sure where the questioning was headed. The judge excused the jury and the prosecutor and witness indicated that the answer to the prosecutor's last question would be, "Because I was worried about her going home." The prosecutor said that that would be his last question along that line. Defense counsel argued that, even though the witness did not say why the witness feared for the victim's safety, the clear implication was that it was because of something the victim told the witness. Again, defense counsel contended, the state was getting "in the back door" what the judge had previously ruled inadmissible. Commenting that he did not think that to be a valid objection, the judge overruled it. The witness testified as proposed.
As the foregoing indicates, defense counsel took the position at trial[6] that even though neither Colip nor Manis said that the reason they feared for victim's safety was because *797 victim had told them she thought defendant had taken her gun, that was the reason they feared for her safety. This raises the nice evidentiary question of whether a witness's testimony offered to prove the truth of the matter asserted that is based solely on information provided by another can be stripped of its hearsay character by removing from the witness's testimony any reference to the source of the information. However, we find it unnecessary to answer that question here because, even if the testimony was hearsay, the "state of mind" exception was available.[7]Lock v. State, 567 N.E.2d 1155 (Ind.1991), illustrates why.
In Lock, a woman was prosecuted for the murder of her mother. At issue was testimony from two witnesses to the effect that the victim had told them shortly before she was killed that her daughter had taken her house key and that this had put her in fear for her own safety. Defendant argued the testimony was inadmissible hearsay as it was offered to prove the defendant had taken the key. Id. at 1159. We concluded that the victim's statements to the witnesses served two purposes. First, they tended to prove that the defendant did, in fact, have a key to the victim's house. But, secondly, they also proved that the victim was fearful of the defendant. This evidence of fear was evidence of the state of mind of the victim, evidence not excluded by the hearsay rule.[8] Under those circumstances, we were required to weigh the prejudicial effect of the admission of the statements for the former purpose against the value of the admission of the statements to the jury in proving the latter. We held that the latter purpose prevailed because the out-of-court declarations here were offered to prove that the victim was apprehensive, fearful, and generally "having trouble" with the defendant, one of the contested issues at trial. Id. We did say that had the defendant requested an admonishing instruction from the court to disregard the evidence from these witnesses as it related to the issue of whether or not the defendant had possession of the key, such request should have been granted. But no such request was made and so we concluded that the statements made by the victim were properly admitted to prove that the relationship between the daughter and the victim was not completely benign, contrary to Lock's assertions at trial. Id.
Under Lock, the trial court here could have permitted Colip and Manis to testify to the effect that the victim had told them that her gun was missing, that she suspected the defendant had taken it, and that she was afraid of him as a result. Defendant would have been entitled to an instruction that the jury should disregard the testimony as it related to whether or not defendant had taken the victim's gun but the testimony would have been admissible to prove the victim's fearful state of mind. Instead, the trial court here took what appears to us to have been an even more favorable stance to the defendant. The court refused to permit the prosecutor to refer to Colip's or Manis's conversations with the victim on the missing gun at all; these witnesses were only permitted to testify as to their fears for her safety. While this was a somewhat unorthodox way of presenting state-of-mind evidence, it did serve to protect defendant from any prejudicial effect from testimony as to what the victim had told the witness about the gun. Such a decision was well within the range of discretion permitted to the trial court in admitting or excluding evidence.

C
Ronald Moran was a friend and former boyfriend of the victim. At trial, Moran testified that a few days before the marriage of the defendant and the victim, he had spoken to the victim at a restaurant where she was employed as a waitress. Later the defendant arrived at the restaurant. As Moran began to describe the circumstances of Moran's departure from the bar, defense counsel objected and the jury was excused. Defense counsel indicated that she expected Moran to testify that, as Moran left the bar, he observed *798 five or six men restraining the defendant who was shouting at Moran. Defense counsel argued that if, as the prosecutor argued, this was not wrongful conduct (which would have been required to have been disclosed in response to defendant's pre-trial discovery requests), it was not relevantthat there was nothing improper that defendant was alleged to have done to Moran.
The prosecutor responded that defendant's behavior demonstrated jealousy and, while acting jealously is not wrongful conduct, it is conduct that goes to defendant's motive. Defense counsel responded that the state had no obligation to prove motive and, for that reason, again questioned its relevancy. The trial court overruled the objection.
The actual testimony before the jury was as follows (prosecutor questioning):
Q: When you left [the bar], did somebody go with you?
A: A girl walked me to the door. And I walked from the door to the truck by myself.
Q: And did you observe anything in regards to the defendant while you were exiting the establishment and going to your truck?
A: I went out the front door. A bunch of `em went out the east door.
Q: You say a bunch of `em ...
A: Five or six, I guess.
Q: Did that involve ... was the defendant in this bunch?
A: They were holding him back.
Q: Okay. And you say holding him back, you mean physically restraining him?
A: Yes.
Q: Okay. And why were they physically restraining him?
DEFENSE COUNSEL: Your Honor, I'm going to object. Unless he was in that group and heard the conversation, he wouldn't know why they were restraining him.
PROSECUTOR: May I withdraw the question, Judge ...
THE COURT: Yes.
PROSECUTOR: ... and start again?
Q: Do you know why they were restraining him?
A: He was gonna ...
DEFENSE COUNSEL: Your Honor ...
THE COURT: The answer is yes or no, Mr. Moran.
Q: Yes or no question.
A: Excuse me.
Q: Do you know why they were restraining him?
A: Yes.
Q: Okay. How do you know that?
A: The girl that walked me to the door said ...
DEFENSE COUNSEL: That's where I object, Judge.
THE COURT: Sustained.
PROSECUTOR: Your Honor, I would go along the line here just a little bit further, if I could. I understand it's still hearsay at this point so ...
THE COURT: Go ahead.
Q: The ... during this period of time, was there anyone including the defendant shouting anything at you?
A: Outside.
Q: Okay. And these shouts were directed at you.
A: Yes.
Q: Okay. And these shouts, who were they coming from?
A: Mostly him, the shouts towards me, but the other hollering was the other guys trying to hold him back.
Q: And those shouts were directed at you then, or at him?
A: I believe he was shouting at me. The other guys were shouting at him to stay back, "Cool it."
Q: All right.
PROSECUTOR: That's all I'd have, Your Honor.
(R. at 365-367) (ellipses in original). Cross-examination followed. After some preliminary questions, the following colloquy occurred (defense counsel questioning):
Q: If I understand correctly, what you're telling this jury is that [defendant] *799 appeared to be upset when he saw you there at the bar that night.
A: Yes.
Q: And his wife-to-be had gone over and sat down and talked to you.
A: Right.
Q: And what was he shouting at you?
A: I couldn't really hear because the other guys were shouting at him.
Q: But he was shouting something at you.
A: Yeah, they were holding him ... physically holding him back.
Q: But he never came to you and actually said anything that you could hear.
A: No.
Q: Never touched you.
A: No.
Q: I have no other questions, sir. Thank you.
(R. at 232-234) (ellipses in original).
Defendant argues that this evidence should have been excluded under Rules 404(b) and 403 of the Indiana Rules of Evidence. We agree with the state's position that the evidence was properly admitted to show defendant's motive for the crime.
Rule 404(b) of Indiana's Rules of Evidence provides:
Evidence of other ... acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
Rule 404(b) excludes evidence of misconduct where it is offered solely for the purpose to show the defendant possesses certain character traits and acts in conformity with those traits. Hardin, 611 N.E.2d at 128. Under Rule 404(b), the trial court first must determine the purpose for which the evidence is offered. Id. at 129.
Evidence of motive is relevant in the proof of a crime. Tompkins v. State, 669 N.E.2d 394, 397 (Ind.1996); Halbig v. State, 525 N.E.2d 288, 291 (Ind.1988). Further, evidence having a tendency to create an inference of motive is within the discretion of the trial court. Id. And jealousy and overprotectiveness can be a motive for murder. In Haggenjos v. State, 441 N.E.2d 430, 431 (Ind. 1982), we held that the defendant's jealous behavior after his wife filed for divorce was admissible as evidence of his motive for killing her. See also id. at 431 (citing cases from other jurisdictions to the same effect). Following Haggenjos, we conclude that the trial court did not abuse its discretion in concluding that the evidence here was not presented to prove the character of defendant but to establish his jealousy and overprotectiveness as the motive for the crime.
Evidence Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.
Defendant contends that even if Moran's testimony has probative value, the trial judge should have excluded the evidence pursuant to Evid.R. 403 because the prejudicial effect of the testimony far outweighs any value. The trial court is afforded wide latitude to determine the probative value and the possible prejudicial impact of evidence. Wallace v. State, 486 N.E.2d 445, 459 (Ind. 1985). We find no abuse of discretion here in light, first, of the probative value of the testimony as to motive and, second, of the likelihood of slight if any prejudicial effect due to the strength of defense counsel's cross-examination of Moran.

II
Defendant contends that the trial court committed reversible error in respect of its treatment of two purported expert witnesses. First, defendant contends that the trial court erred in permitting a paramedic to testify as to the time of death of the victim. Second, defendant contends that the trial court also erred in refusing to permit a child psychologist to testify as to defendant's suffering post-traumatic stress disorder.
Ind.Evidence Rule 702(a) provides:

*800 If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion....
Two requirements must be met in order for a witness to qualify as an expert: (1) the subject matter is distinctly related to some scientific field, business or profession beyond the knowledge of the average lay person; and (2) the witness is shown to have sufficient skill, knowledge or experience in that area so that the opinion will aid the trier of fact. James v. State, 613 N.E.2d 15, 22 (Ind.1993); Fox v. State, 506 N.E.2d 1090, 1095 (Ind.1987). See also Harrison v. State, 644 N.E.2d 1243, 1251 (Ind.1995), cert. denied, ___ U.S. ___, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996) (duty of trial court to find witness qualified as matter of law to give expert testimony). Absent a showing of an abuse of discretion, a reviewing court will not disturb a trial court's determination as to the competency of a witness to testify as an expert. Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 365 (Ind.1982); Randolph County Hosp. v. Livingston, 650 N.E.2d 1215, 1219 (Ind.Ct.App.1995), trans. denied.

A
Ron Box, an Anderson fire department paramedic, was the first medical officer to arrive at the scene of the murder. At trial, Box testified that it was his opinion that the victim's time of death was approximately 25 to 35 minutes prior to his arrival. Defendant argues that Box was not qualified to give an expert opinion as to the time of death.
At the time of the trial Box had been a paramedic for six and a half years and an emergency medical technician for twelve years. Box obtained his specialized knowledge through education, training and participation in autopsies. Box testified that he had made conclusions as to the time of death about two hundred times. Box based his opinion on his observations of how much lividity had occurred in the victim. Defendant does not contest that Box's knowledge in this area is beyond that of the average lay person. We conclude that the trial court did not abuse its discretion in allowing Box to give his opinion as to the time of death of the victim.

B
Dr. Susan Spencer was called as a defense witness. She would have testified that after the shooting defendant displayed the symptoms of post traumatic stress disorder. Defendant contends that the trial court erred in refusing to allow Dr. Spencer to testify as an expert.
At the time of the trial, Spencer had worked for fourteen years at the Center for Mental Health in Anderson, Indiana, as a psychologist with a primary focus in child psychology. She readily admitted that she was not an expert in post-traumatic stress disorder. We conclude that the trial court did not abuse its discretion in refusing to allow Spencer to give her opinion as to defendant's suffering post-traumatic stress disorder.

III
The standard penalty prescribed by our legislature for murder at the time this crime occurred was forty years.[9] The trial court imposed the maximum sentence available, sixty years. The trial court justified the twenty year enhancement of the presumptive sentence by the following aggravating factors: (1) imposition of a reduced sentence would depreciate the seriousness of the crime; (2) the facts of the crime were particularly heinous in that the victim was at home and had placed trust and confidence in the defendant and that the killing was "cold-blooded, heartless, manipulated ... and basically... premeditated"; (3) the defendant did not exhibit any kind of remorse and continued to represent to the court that the killing was an accident when the evidence at trial demonstrated that that was "totally impossible;" and (4) the devastation felt by the victim's "close-knit family." The trial court *801 made no mention of the existence of or consideration of any mitigating factors.
Defendant contends that the imposition of a sixty year sentence was manifestly unreasonable because the trial court utilized improper aggravating circumstances and abused its discretion in failing to find the existence of a significant mitigating circumstance. Making sentencing determinations is within a trial court's discretion, Sims v. State, 585 N.E.2d 271, 272 (Ind.1992), and is regulated by Indiana Code § 35-38-1-7.1 (1993). This statute includes a list of aggravating factors that justify increasing a presumptive sentence. Ind.Code § 35-38-1-7.1(b) (1993). It also permits the trial court to use other relevant aggravating and mitigating circumstances. Ind.Code § 35-38-1-7.1(d) (1993). Although a trial court must consider all evidence of mitigating factors that a defendant presents, a finding that a significant mitigating factor exists is within the trial court's discretion. Harris v. State, 659 N.E.2d 522, 528 (Ind.1995).
The Indiana Constitution confers upon this court the power to review and revise sentences. Ind. Const. art. VII, § 4. Indiana Appellate Rule 17(B) discusses this authority. Application of this rule requires that we look to see if the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender."[10]See Fointno v. State, 487 N.E.2d 140, 145 (Ind. 1986). If, using this standard, we find a sentence inappropriate, we will revise it to make it reasonable. Barany v. State, 658 N.E.2d 60, 67 (Ind.1995).
While we are unable to find the sentence here manifestly unreasonable, we have sufficient concerns about the trial court's sentencing statement that we remand for a new sentencing hearing. First, we find one of the aggravating circumstances cited by the trial court inappropriate for use here. The trial court found the statutory aggravating circumstance "that imposition of a reduced sentence would depreciate the seriousness of the crime." Ind.Code § 35-38-1-7.1(b)(4) (1993). This aggravating factor is used to support a refusal to reduce the presumptive sentence. Ector v. State, 639 N.E.2d 1014, 1015 (Ind.1994) (citing Evans v. State, 497 N.E.2d 919, 923 (Ind.1986)). There is nothing in the record indicating that the trial court was considering a reduced sentence. Therefore, the use of this aggravating circumstance was improper.
Second, under normal circumstances the impact upon family is not an aggravating circumstance for purposes of sentencing. See Penick v. State, 659 N.E.2d 484, 488 (Ind.1995). The impact on others may qualify as an aggravator in certain cases but "the defendant's actions must have had an impact on ... `other persons' of a destructive nature that is not normally associated with the commission of the offense in question and this impact must be foreseeable to the defendant." State v. Johnson, 124 Wash.2d 57, 873 P.2d 514, 525 (1994) (citing State v. Cuevas-Diaz, 61 Wash.App. 902, 812 P.2d 883, 884 (1991)).
We appreciate the terrible loss of a loved one. But because such impact on family members accompanies almost every murder, we believe it is encompassed within the range of impact which the presumptive sentence is designed to punish. In the present case, nothing in the trial court's statement at sentencing suggests that the impact on the victim's children and parents is of the type so distinct so as to rise to the level of an aggravating circumstance.
Third, the trial court cites as aggravating circumstances defendant's continued lack of remorse for the shooting and insistence that the killing was accidental. A lack of remorse by a defendant who insists upon his innocence is to be regarded only as a modest aggravator. Owens v. State, 544 N.E.2d 1375, 1379 (Ind.1989).
Indiana Code § 35-38-1-7.1(c)(6) (1993 & Supp.1996) provides that a sentencing court may consider as a mitigating circumstance that the defendant "has no history *802 of delinquency or criminal activity or the person has led a law-abiding life for a substantial period before commission of the crime." A trial court may not disregard facts in the record that would mitigate the sentence. Widener v. State, 659 N.E.2d 529, 534 (Ind.1995). This Court will assume a trial court failed to weigh a mitigator when that mitigator is clearly supported by the record and the trial court did not discuss it. Elmore v. State, 657 N.E.2d 1216, 1220 (Ind. 1995).
In the present case, defendant put forth evidence at the sentencing hearing that his prior criminal history was limited to a public intoxication charge and an A.W.O.L. from the service. Neither the trial court's sentencing order nor record of the sentencing hearing mention defendant's lack of prior criminal offenses as a significant mitigating circumstance.
When we consider the concerns expressed above about the aggravating circumstances and the fact that the trial court failed to discuss the proffered mitigating circumstance of lack of prior history of criminal conduct, we do not think we are in a position to affirm this sentence, particularly since it contains the maximum enhancement permitted by law and should, therefore, be reserved for the very worst offenses and offenders.

Conclusion
Defendant's conviction is affirmed. We remand this case to the trial court to conduct a new sentencing hearing.
SHEPARD, C.J., and SELBY, J., concur.
BOEHM, J., dissents with opinion, in which DICKSON, J., concurs.
BOEHM, Justice, dissenting.
I respectfully dissent for two reasons. I believe the majority sets a precedent that is incorrect and excessively expansive in its view of the "state of mind" evidence under Indiana Evidence Rule 803(3). Second, the majority finds harmless a piece of erroneously admitted evidence that I believe may have been important in the jury's reasoning.

A. Statements of Concern for the Victim's Safety
The majority finds statements of Colip's and Manis's concern for the victim's safety to be admissible as establishing the victim's state of mind. There are two problems with this analysis. First, the victim's state of mind must be relevant to some issue in the case. The key to Lock v. State, 567 N.E.2d 1155 (Ind.1991) was that the relationship between the victim and the accused "was one of the contested issues at trial." Id. at 1159-60. Because the defendant in Lock claimed a harmonious domestic relationship, and the victim's statements tended to controvert that claim, the statements were admissible in Lock (a common law case) and under Indiana Evidence Rule 803(3) as evidence of the declarant's emotion (fear) that was relevant to an issue in the case (the quality of the victim's relationship to the killer). As a general proposition, however, the victim's state of mind, as such, is irrelevant to a murder charge. To be relevant it must be tied to some subsidiary issue in the case. In this case, in view of the victim's having filed for an annulment, there does not appear to have been any dispute that the victim and the defendant were having a difficult marital relationship, and the parties do not contend that the relationship was in issue. For that reason, the victim's state of mind does not seem to bear on any issue.
A second problem arises in this case because the statements of the witnesses were not reports of what the victim said or did, or even expressions of opinions as to the victim's state of mind. Rather, Colip and Manis testified as to their fears for the victim's safety. Their fears, as such, are susceptible to various interpretations, some perhaps much more sinister than the statements or acts on which the witnesses' beliefs were based. The witnesses' statements of concern for the victim's safety also smacked of opinions as to the defendant's guilt or innocence which are expressly prohibited by Indiana Evidence Rule 704(b). In short, the mental state of Colip and Manis is relevant to no issue in the case. If the relationship between the defendant and the victim were an issue, then statements or acts of the victim *803 might be admissible to show her mental state to the extent it reflects on that relationship. In that circumstance, to the extent either witness had personal knowledge of statements or events that bear on that relationship, the witness's account of the statement or event may be admitted. But that account alone, not the conclusions the witness draws from it, is admissible.

B. Reports of the Missing Gun
A police officer was allowed to testify that two days before the victim died she reported her gun missing. That gun was ultimately shown by ballistics to be the weapon that killed her. This testimony is clearly hearsay if offered to prove the victim's gun was missing. The majority concludes that this testimony was harmless error. I cannot agree that this evidence was harmless. The fact that the victim's gun, the instrument of her death, was missing may very well have been critical in the jury's rejection of Bacher's account of his wife's death as an accident. If the gun was missing, then it was possible to infer that the defendant, not the victim, brought it to the bedroom where the shooting occurred. From that conclusion the jury may have rejected defendant's story that the victim grabbed the gun, which resulted in a struggle and her accidental death. The jury knew from Mr. Shuck that the victim had Shuck's gun in her possession. Fortifying this fact with the absence of her own gun may have been enough to convince the jury to conclude that the defendant, not the victim, first displayed the gun that fired the lethal shot.
I agree with the majority that the report was inadmissible under the Indiana Rules of Evidence. It is not a public record admissible under Rule 803(8), but not for the reason that it was recorded by a police officer. Although the witness was a police officer, he was not investigating anything when he received the routine report of a missing gun. Rather, he recorded it in the normal course of his duties as an unsolicited report. It is not excluded by Indiana Evidence Rule 803(8) because he was not "investigating" and made no "finding." However, to be a public record the recording person (the officer) must also have "observed" the "matter" or recorded his activities. If the relevant fact is that the victim reported the gun missing (as opposed to that it was missing), then the public records exception would admit it. In this respect the exception under Rule 803(8) has the same substantive requirement as the business records exception under Rule 803(6) that the source of the information be a person acting in the course of a regularly conducted activity. Indiana has no residual "trustworthiness" test for statements of unavailable witnesses such as Federal Rule of Evidence 804(b)(5) (to be redesignated as part of new Rule 807, effective December 1, 1997 in the absence of congressional action). If we had such a provision, this report would seem to fit. However, the Indiana Rules plainly purposely withheld this wide discretion from our trial courts. The price of this vigilance against excessively unreliable evidence is the exclusion of some that is sufficiently reliable, but fits none of the existing pigeonholes. This is such a case. In light of this restriction, it was error to admit the report of the missing gun. I would reverse and remand for a new trial.
DICKSON, J., concurs.
NOTES
[1] "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
[2] Craig v. State prescribes the trial court's obligations where evidence in the form of out-of-court statements received by police officers performing investigative work is contested as hearsay and the state responds that the evidence is not offered to prove the truth of the facts asserted in the statements but to show that a report was made and to explain the conduct of the police in performing the investigative work. Craig v. State, 630 N.E.2d 207, 210 (Ind.1994). In such a situation, Craig requires the trial court to assess the evidentiary purpose for the proffered evidence. "If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid.R. 801(d), then the hearsay objection should be sustained, unless the [evidence] fits an exception to the hearsay rule." Id. at 211.
[3] Evid.R. 803(3) provides that a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)" is not excluded by the hearsay rule.
[4] In addition, we observe that the police report does not meet the definition of a business record eligible for exception from the hearsay rule under Evid.R. 803(6). Rather, it constitutes a police investigative report expressly covered by the hearsay rule. Evid.R. 803(8).
[5] In arguing that the trial judge did not err in admitting this testimony, the state relies on the concept of res gestae. Following the close of briefing in this case, we decided Swanson v. State, 666 N.E.2d 397, 398 (Ind.1996), which held that the admissibility of evidence should be analyzed not by the imprecise common law concept of res gestae but by reference to the language of the Indiana Rules of Evidence.
[6] Defendant argues on appeal that such testimony amounts to an opinion as to the state of mind of another prohibited by Johnson v. State, 584 N.E.2d 1092 (Ind.1992) and Strickland v. State, 265 Ind. 664, 359 N.E.2d 244 (Ind.1977). See also Evid.R. 701 (opinion testimony by lay witnesses). Defendant did not object to this testimony on this basis at trial. A party may not present one ground for an objection at trial and advance another ground on appeal. Brewer v. State, 605 N.E.2d 181, 183 (Ind.1993); Wright v. State, 593 N.E.2d 1192, 1194 (Ind.1992). Defendant's objection at trial, which was vigorously contested by both sides, was that this testimony constituted inadmissible hearsay. In the interest of judicial economy, we address the hearsay argument here.
[7] See note 3, supra.
[8] Evid.R. 803(3) provides that a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition" is not excluded by the hearsay rule.
[9] Ind.Code § 35-50-2-3 (1993).
[10] Prior to amendment effective March 1, 1997, App.R. 17(B) provided that the reviewing court would not find a sentence to be manifestly unreasonable unless "no reasonable person could find such sentence appropriate to the particular offense and offender." The amendment deleted this requirement.