BOEHM, Justice,
dissenting.
I respectfully dissent for two reasons. I believe the majority sets a precedent that is incorrect and excessively expansive in its view of the “state of mind” evidence under Indiana Evidence Rule 803(3). Second, the majority finds harmless a piece of erroneously admitted evidence that I believe may have been important in the jury’s reasoning.
A. Statements of Concern for the Victim’s Safety
The majority finds statements of Colip’s and Manis’s concern for the victim’s safety to be admissible as establishing the victim’s state of mind. There are two problems with this analysis. First, the victim’s state of mind must be relevant to some issue in the case. The key to Lock v. State, 567 N.E.2d 1155 (Ind.1991) was that the relationship between the victim and the accused “was one of the contested issues at trial.” Id. at 1159-60. Because the defendant in Lock claimed a harmonious domestic relationship, and the victim’s statements tended to controvert that claim, the statements were admissible in Lock (a common law case) and under Indiana Evidence Rule 803(3) as evidence of the declarant’s emotion (fear) that was relevant to an issue in the case (the quality of the victim’s relationship to the killer). As a general proposition, however, the victim’s state of mind, as such, is irrelevant to a murder charge. To be relevant it must be tied to some subsidiary issue in the case. In this case, in view of the victim’s having filed for an annulment, there does not appear to have been any dispute that the victim and the defendant were having a difficult marital relationship, and the parties do not contend that the relationship was in issiie. For that reason, the victim’s state of mind does not seem to bear on any issue.
A second problem arises in this case because the statements of the witnesses were not reports of what the victim said or did, or even expressions of opinions as to the victim’s state of mind. Rather, Colip and Manis testified as to their fears for the victim’s safety. Their fears, as such, are susceptible to various interpretations, some perhaps much more sinister than the statements or acts on which the witnesses’ beliefs were based. The witnesses’ statements of concern for the victim’s safety also smacked of opinions as to the defendant’s guilt or innocence which are expressly prohibited by Indiana Evidence Rule 704(b). In short, the mental state of Colip and Manis is relevant to no issue in the case. If the relationship between the defendant and the victim were an issue, then statements or acts of the victim *803 might be admissible to show her mental state to the extent it reflects on that relationship. In that circumstance, to the extent either witness had personal knowledge of statements or events that bear on that relationship, the witness’s account of the statement or event may be admitted. But that account alone, not the conclusions the witness draws from it, is admissible.
B. Reports of the Missing Gun
A police officer was allowed to testify that two days before the victim died she reported her gun missing. That gun was ultimately shown by ballistics to be the weapon that killed her. This testimony is clearly hearsay if offered to prove the victim’s gun was missing. The majority concludes that this testimony was harmless error. I cannot agree that this evidence was harmless. The fact that the victim’s gun, the instrument of her death, was missing may very well have been critical in the jury’s rejection of Bacher’s account of his wife’s death as an accident. If the gun was missing, then it was possible to infer that the defendant, not the victim, brought it to the bedroom where the shooting occurred. From that conclusion the jury may have rejected defendant’s story that the victim grabbed the gun, which resulted in a struggle and her accidental death. The jury knew from Mr. Shuck that the victim had Shuck’s gun in her possession. Fortifying this fact with the absence of her own gun may have been enough to convince the jury to conclude that the defendant, not the victim, first displayed the gun that fired the lethal shot.
I agree with the majority that the report was inadmissible under the Indiana Rules of Evidence. It is not a public record admissible under Rule 803(8), but pot for the reason that it was recorded by a police officer. Although the witness was a police officer, he was not investigating anything when he received the routine report of a missing gun. Rather, he recorded it in the normal course of his duties as an unsolicited report. It is not excluded by Indiana Evidence Rule 803(8) because he was not “investigating” and made no “finding.” However, to be a public record the recording person (the officer) must also have “observed” the “matter” or recorded his activities. If the relevant fact is that the victim reported the gun missing (as opposed to that it was missing), then the public records exception would admit it. In this respect the exception under Rule 803(8) has the same substantive requirement as the business records exception under Rule 803(6) that the source of the information be a person acting in the course of a regularly conducted activity. Indiana has no residual “trustworthiness” test for statements of unavailable witnesses such as Federal Rule of Evidence 804(b)(5) (to be redesignated as part of new Rule 807, effective December 1, 1997 in the absence of congressional action). If we had such a provision, this report would seem to fit. However, the Indiana Rules plainly purposely withheld this wide discretion from our trial courts. The price of this vigilance against excessively unreliable evidence is the exclusion of some that is sufficiently reliable, but fits none of the existing pigeonholes. This is such a ease. In light of this restriction, it was error to admit the report of the missing gun. I would reverse and remand for a new trial.
DICKSON, J., concurs.