



IN THE

# Indiana Supreme Court

Supreme Court Case No. 63S04-1709-CR-570

## Brian L. Paquette,
*Appellant (Defendant below),*

—v—

## State of Indiana,
*Appellee (Plaintiff below).*

---

Argued: October 12, 2017 | Decided: June 29, 2018

Appeal from the Pike Circuit Court, No. 63C01-1602-F3-73
The Honorable Jeffrey L. Biesterveld, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 63A04-1612-CR-02891

---

**Opinion by Justice David**

Chief Justice Rush, Justice Massa, Justice Slaughter, and Justice Goff concur.

**David, Justice.**

We are asked to resolve whether a defendant can be convicted of multiple felony resisting law enforcement charges when those charges stem from a single incident of resisting. For reasons discussed herein, we find that Indiana Code section 35-44.1-3-1 authorizes only one conviction for felony resisting law enforcement where the defendant engages in a single act of resisting while operating a vehicle that causes multiple deaths. Accordingly, we reverse the trial court and remand for revised sentencing.

# Facts and Procedural History

On the evening of February 2, 2016, Indiana Police State Trooper James Manning ("Trooper Manning") was parked on the northbound shoulder of I-69, near Petersburg, Indiana. A motorist pulled over and informed Trooper Manning that he observed a blue Chevy Tahoe driving northbound on the southbound lanes of the interstate. Trooper Manning activated his patrol vehicle's emergency signals—the lights and siren—and gave chase, driving northbound on I-69. Shortly thereafter, he spotted a blue SUV driving on the wrong side of the road. Officers later learned that Brian L. Paquette was driving that vehicle.

As Trooper Manning approached the blue SUV, he aimed his spotlight at the fleeing vehicle. Trooper Manning then pulled into the median, and Paquette seemed to slow down. Instead of coming to a full stop, however, Paquette made a U-turn onto the northbound lane and continued driving on the wrong side of the road, this time heading south. Trooper Manning immediately veered onto the southbound road and followed Paquette, once again shining his spotlight at the blue SUV.

At the same time, several passenger vehicles traveled north on the northbound road. Among those was a vehicle occupied by Jason and Samantha Lowe, who were returning to their home in Fishers, Indiana after visiting Samantha's mother at an Evansville hospital. Also traveling northbound on I-69 were Stephanie Molinet and Autumn Kapperman, who were riding in a Ford Focus to pick up Kapperman's sister and her

newly-born niece from Riley Hospital. Kapperman was expecting a child of her own at the time of the incident.

Trooper Manning followed in pursuit and Paquette continued southbound, driving between two northbound lanes. Within two miles of making the U-turn, Paquette's SUV collided head-on with Molinet's Ford Focus, striking the passenger side where Kapperman was seated. Molinet, Kapperman, and Kapperman's unborn child died as a result of the crash. The impact of the collision caused Paquette's Chevy Tahoe to flip over and land on the driver's side of the Lowe's vehicle, instantly killing Jason Lowe.

Paquette survived the crash. While officers waited for firefighters to extract Paquette from his vehicle, Paquette told an officer that, at the time of the crash, he believed he was being chased by farmers through a field. He also believed he was carrying a female passenger, but officers found no evidence of another passenger at the crash site.

The State charged Paquette with a total of eleven offenses. Among those were three counts for each of the following: resisting law enforcement by fleeing in a vehicle causing death, a Level 3 felony; operating a vehicle with methamphetamine in his blood causing death, a Level 4 felony; and reckless homicide, a Level 5 felony. Each duplicative count related to one of the three deceased victims. Paquette was also charged with operating a vehicle with methamphetamine in his body causing serious bodily injury to Samantha Lowe, a Level 6 felony; and possession of methamphetamine, a Level 6 felony.

Paquette agreed to plead guilty to all charges, but reserved the right to ask the court to enter only one conviction and sentence for the felony resisting law enforcement charge. Paquette argued that he engaged in only one act of resisting, thus conviction on all three resisting law enforcement felony charges—one for each deceased victim—violated a state and federal prohibition on double-jeopardy. On that issue, the trial court ruled against Paquette, finding that conviction and sentence on all three counts of resisting law enforcement was not barred by double-jeopardy protections.

The trial court then entered convictions on all three Level 3 felony counts of resisting law enforcement and on the charge of operating a vehicle with methamphetamine in his blood causing serious bodily injury. The court merged the remaining counts into the four aforementioned counts. For each of the three felony resisting law enforcement convictions, the trial court imposed 16-year sentences to be served consecutively. For the operating while intoxicated conviction, Paquette received a 2.5-year sentence to be served consecutively with the resisting sentences. In total, Paquette was to serve fifty-and-a-half years executed.

Paquette appealed, making a statutory argument instead of a constitutional one. He argued that, as written, Indiana's resisting law enforcement statute authorizes only one conviction for each act of resisting and that the trial court, therefore, erred when it entered three convictions and sentences against him.[1] Relying on its own precedent in *Armstead v. State*, 549 N.E.2d 400 (Ind. Ct. App. 1990), the Court of Appeals reversed and remanded for revised sentencing. It held that the legislature intended only one conviction for each act of resisting, and since Paquette had only engaged in one act of resisting when he fled using a vehicle, he could be convicted of only one count of felony resisting law enforcement. *Paquette v. State*, 79 N.E.3d 932, 935-36 (Ind. Ct. App. 2017).

The State sought transfer, which we granted, thereby vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Matters of statutory interpretation, which inherently present pure questions of law, are reviewed de novo. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016).

---

[1] Paquette also argued that the sentence imposed by the trial court was inappropriate, but the Court of Appeals declined to address that argument because Paquette's sentence would be modified on remand as a result of its decision.

# Discussion and Decision

The question we address today is identical to the one raised before our Court of Appeals: whether multiple convictions and sentences are permissible under Indiana Code section 35-44.1-3-1, where the defendant operated a vehicle in a manner that caused death to multiple people. The defendant, Paquette, was charged with several offenses, but only three felony resisting law enforcement counts are at issue here.

In relevant part, Indiana Code section 35-44.1-3-1 states that a person commits the crime of resisting law enforcement when he "knowingly or intentionally . . . flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself . . . and ordered the person to stop." Ind. Code § 35-44.1-3-1(a)(3).

Resisting law enforcement is ordinarily a Class A misdemeanor, but subsection (b) provides several exceptions. Notably, under paragraph (b)(3), the offense becomes a Level 3 felony if, while resisting law enforcement as described in subsection (a), "the person operates a vehicle in a manner that causes the death of another person . . ." Ind. Code § 35-44.1-3-1(b)(3). Paquette's three counts for Level 3 felony resisting law enforcement relate to three victims killed as a result of his flight.

Whether Paquette resisted law enforcement was not the basis for the Court of Appeals' reversal and is not in dispute today. Paquette fled from an officer who was driving a marked police vehicle with the emergency lights and siren activated, and Paquette ignored the officer's signal to pull over. Likewise, whether Paquette operated the vehicle in a manner that caused death is clear; drug-induced hallucinations led Paquette to drive his vehicle on the wrong side of the interstate, which directly caused the death of three motorists who had the misfortune of crossing paths with Paquette. Instead, the Court of Appeals' reversal hinged on its interpretation of the relevant statute. It held that Indiana Code section 35-44.1-3-1 authorizes only one conviction where the offense stems from a single act of resisting law enforcement. "Because Paquette engaged in only one act of resisting," the Court of Appeals found that "he [could] be

convicted and sentenced on only one count of resisting law enforcement." *Paquette*, 79 N.E.3d at 936.

The State challenges the Court of Appeals' holding, proposing a different interpretation of the statute. It argues that the trial court was correct in entering judgment on three counts of resisting law enforcement while operating a vehicle in a manner that caused death—one count for each deceased victim—because the legislature intended multiple convictions for multiple deaths resulting from the same act of resisting. Recognizing that our Court of Appeals is split on this issue, we granted transfer.

## I. The Court of Appeals' reliance on its own precedent in *Armstead v. State* was not misplaced.

Our Court of Appeals relied heavily on *Armstead*, 549 N.E.2d at 400 to find that Paquette could not be convicted of multiple felony resisting law enforcement charges where a single act of resisting law enforcement led to multiple deaths. While Paquette urges us to adopt the Court of Appeals' holding in *Armstead*, the State argues that reliance on *Armstead* was entirely misplaced because *Armstead* dealt only with offenses against multiple officers. We begin by first addressing whether *Armstead* is inapplicable.

The Court of Appeals' reliance on *Armstead* was not misplaced because the *Armstead* court did not limit its holding to harms suffered by police officers. While it is true that the *Armstead* court addressed only section (a) and paragraph (b)(1) in its decision and made no mention of acts of resisting law enforcement that reach out into the public, the *Armstead* panel used language that suggests it intended its holding to extend to other portions of the statute—even those portions not at issue in that case. Two parts of the *Armstead* opinion come to mind in examining the extent of the holding's application. First, the court stated that "[t]he offenses set forth in title 35, art. 44, ch. 3 do not constitute crimes against the person." *Armstead*, 549 N.E.2d at 401. Second, it found that "[a] person who violates [Indiana Code section] 35-44-3-3 harms the peace and dignity of

the State . . . and its law enforcement authority." *Id.* In both instances, the *Armstead* court referred to the entire statute instead of limiting its rationale to the portions that were at issue in the case. The court's broad language indicates that the panel deciding *Armstead* contemplated the impact its holding would have on other portions of the statute and intended it to apply to those as well. Thus, we find unpersuasive the argument that *Armstead* is inapplicable here because its holding has a narrow application.

We recognize that the statute in place at the time of the *Armstead* decision was different from the one used to convict Paquette, but we find the rationale used by the Court of Appeals to decide *Armstead* applies with equal force to the current version of the statute. When *Armstead* was decided, the resisting law enforcement statute was codified in Indiana Code section 35-44-3-3. The structure of the relevant subsections was essentially the same as it is now.[2] The clause making it a felony to resist law enforcement while "operat[ing] a vehicle in a manner that causes the death of another person" was added as paragraph (b)(3) in 1993, see P.L.

---

[2] In 1990, subsections (a) and (b) of the statute provided:

    (a)  A person who knowingly or intentionally:

        (1)  Forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

        (2)  Forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

        (3)  Flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;

    Commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

    (b)  The offense under subsection (a) is a:

        (1)  Class D felony if, while committing it, the person draws or uses a deadly weapon, inflicts bodily injury on another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person; and

        (2)  Class C felony if, while committing it, the person operates a vehicle in a manner that causes serious bodily injury to another person . . . .

Ind. Code § 35-44-3-3 (1988).

248-1993, § 1, but its language is substantially similar to portions of the statute in the earlier version considered by the *Armstead* court. Specifically, paragraph (b)(2) strikes a significant resemblance to the paragraph at issue in this case. While paragraph (b)(2) in the earlier version made it a felony to resist law enforcement if the offense was committed by a person "operat[ing] a vehicle in a manner that *cause[d] serious bodily injury* to another person," Ind. Code § 35-44-3-3(b)(2) (1988), the paragraph at issue now enhances the resisting law enforcement offense where the defendant operates a vehicle, which *causes death* of another person. The only significant difference between the two is the degree of harm caused; the mode and subject of the harms stayed the same. Thus, if the *Armstead* holding was intended to apply to the entire statute in place at that time—including paragraph (b)(2)—it also applies to paragraph (b)(3) of the current statute.

To be clear, we reiterate that the specific facts of *Armstead* dealt only with injuries suffered by arresting officers, including a broken nose sustained by one of the arresting officers, but the State fails to consider that the statutory paragraph assessed in *Armstead* did not itself limit the felony enhancement to serious bodily injuries sustained by police officers. Rather, that portion served to enhance the offense of resisting law enforcement "if, while committing [the offense], the person operate[d] a vehicle in a manner that cause[d] serious bodily injury to another person." The critical language—"another person"—left open the possibility that serious bodily injury incurred by innocent by-standers could be the basis for a felony enhancement of a resisting law enforcement charge. Meanwhile, the portion of the statute that served to enhance Paquette's conviction shares the "other person" language that existed in the very paragraph the *Armstead* court considered. Accordingly, we cannot agree with the State that *Armstead* is inapplicable or that the Court of Appeals' reliance on its own holding was entirely misplaced.

## II. Indiana Code section 35-44.1-3-1 permits only one conviction for each act of resisting.

Turning to the heart of the issue, we find that the resisting law enforcement statute, as written, was intended to permit only one conviction for each act of resisting, even where multiple deaths are caused by use of a vehicle.

While the *Armstead* decision is not inapplicable, it does not fully resolve the issue before us. The *Armstead* court was silent on whether subsection (b) creates a new and independent offense; it dealt only with a single offense under subsection (b). The present case, on the other hand, involves a claim that each death constitutes a new and independent offense, totaling three offenses under the same subsection. Nonetheless, we agree that the *Armstead* decision is helpful, and we find that it serves as a starting point to analyze the legislature's intent.

Throughout the *Armstead* opinion, the Court of Appeals referred to separate and discrete incidents that may be the basis for a conviction. To the extent that the Court of Appeals sought to highlight the separate and distinct incidents outlined in subsection (a), we find they were correct. Any of the several acts in subsection (a) constitute a separate offense of resisting law enforcement, and when more than one of those incidents occurs, we may uphold multiple resisting law enforcement convictions. Conversely, a single discrete incident can be the basis for only one conviction, no matter how many individuals are harmed. This is because, as the *Armstead* court noted, "a person who violates [the statute] harms the peace and dignity of the State of Indiana and its law enforcement authority." *Armstead*, N.E.2d at 401. We agree with the *Armstead* panel that resisting law enforcement is inherently an offense against authority, not the individual officers. So, whether a defendant resists one officer or twenty-five officers, the offense remains the same.

The above principle applies equally when dealing with an offense under subsection (b). We find that an offense committed under subsection (b) continues to be a harm against the peace and dignity of the State because the offender is, at his core, still resisting law enforcement. As

written, no new or independent offense is created when subsection (b) is invoked. Rather, subsection (b) enhances the degree of the offenses outlined in subsection (a). In other words, it merely moves the needle in terms of gravity. Thus, the offense that involves a single affray with police will continue to be a single harm to the peace and dignity of the State, regardless of how many other people are killed.

To be sure, we examine the statute's structure and language. Several features of the statute indicate that the legislature intended only to increase the gravity of the offense, not to create an entirely new offense for each individual injured or killed. First, we note that subsection (a)—which outlines the three ways in which a person knowingly or intentionally resists law enforcement—lays the foundation for the offense in question. In relevant part, it prohibits a person from fleeing from law enforcement where the officer has "by visible or audible means . . . identified himself . . . and ordered the person to stop." Ind. Code § 35-44.1-3-1(a)(3). Without this first subsection, the subsequent subsections outlined in the statute could not stand.

Second, the legislature's deliberate use of cross-referencing between subsections (a) and (b) bolsters our reading of the statute. Notably, subsection (a) states that each paragraph violated is deemed a Class A misdemeanor, "except as provided in subsection (b)." Ind. Code § 35-44.1-3-1(a). Subsection (b), then references back to subsection (a), noting that "[t]he offense under subsection (a)" can become a felony or felonies of varying levels, depending on certain factors. Ind. Code § 35-44.1-3-1(b). The deliberate manner of cross-referencing between subsections (a) and (b) indicates that, rather than a separate offense, the legislature intended subsection (b) to be an enhancement that stems from the foundation outlined in subsection (a).

Finally, while the use of the word "or" following paragraph (2) of subsection (a) makes clear that each paragraph in that subsection was intended to be a separate and distinct offense, the legislature chose to structure subsection (b) differently. It drafted the various paragraphs in the conjunctive, using the word "and" following paragraph (3). This indicates that the legislature aimed to accomplish something different

with subsection (b).  We think that the only logical reading of the statute is that the legislature intended the various paragraphs of subsection (b) to serve as enhancements of a single offense stemming from subsection (a).

For good measure, we compare Indiana Code section 35-44.1-3-1 to other statutes, which we find further supports our reading of the statute. Specifically, we analyze statutes where our legislature has expressly allowed convictions for each death caused by a single act.  Indiana Code section 9-30-5-5, for example, addresses operating a vehicle while intoxicated and authorizes multiple convictions when multiple deaths occur.  But its structure differs greatly from the resisting law enforcement statute at issue here.  For starters, it makes operating a vehicle "while intoxicated" a stand-alone crime when it "causes the death of another person."  Ind. Code § 9-30-5-5(a)(3).  Subsection (e) goes on to expressly allow multiple convictions if multiple deaths occur; it provides that a person who violates the statute "commits a separate offense for each [victim] whose death is caused by the violation[.]"  Moreover, we glean the legislature's intent to allow multiple convictions from the fact that the General Assembly added the provision in subsection (e) after we summarily affirmed the Court of Appeals' holding, which allowed only one conviction for one violation of the operating while intoxicated statute. P.L. 53-1994, § 6.  We agreed with the Court of Appeals that, without express authorization, multiple convictions arising from a single incident could not stand, even if multiple deaths occurred.

Similarly, Indiana Code section 35-43-1-1, a statute making arson unlawful, proves instructive here.  Subsection (a) of that statute outlines the various ways a person may commit arson and then enhances the underlying arson offense if "it results in serious bodily injury."  We held in *Mathews v. State*, 849 N.E.2d 578 (Ind. 2006) that the version of the statute in place at the time allowed only one arson conviction, regardless of the number of people injured.  There too, the General Assembly added a provision to the statute in response to our decision.  While the current version of the arson statute neglects to make arson resulting in serious bodily injury a stand-alone offense, it explicitly allows separate convictions "for each person who suffers a . . . serious bodily injury that is caused by violation of subsection (a) . . . ."  Ind. Code § 35-43-1-1(e).

Unlike the arson and operating a vehicle while intoxicated statutes, the resisting law enforcement statute is silent on multiple convictions when multiple deaths occur.

Ultimately, we find unpersuasive the State's contention that the legislature intended to create an independent criminal offense for each person killed when a defendant resists law enforcement using a vehicle. Nothing about the structure or language of the statute creates a new or independent offense and our inquiry into other similar statutes confirms our reading of Indiana Code section 35-44.1-3-1. Our legislature is aware that multiple convictions for multiple harms caused by a single violation require explicit authorization and we trust that they would have done so if that was their intent.

Since our legislature has drafted the resisting law enforcement statute without such explicit authorization and has otherwise remained silent, we glean its intent to allow only one resisting law enforcement conviction for each act of resisting. Subsection (b) merely enhances the underlying offenses in subsection (a), thus the number of resulting deaths does not affect the number of convictions allowed—only one is permissible. To find otherwise would require us to engraft language into a statute, which we have repeatedly said we may not do. *See Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017) ("We may not add new words to a statute which are not the expressed intent of the legislature"); *see also Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013) ("Further, [c]ourts may not engraft new words onto a statute or add restrictions where none exist") (internal citations and quotation omitted). Accordingly, we find that Paquette could not be convicted of multiple resisting law enforcement charges stemming from a single act of resisting.

## Conclusion

We find that Paquette could not be convicted of more than one felony resisting law enforcement charge where multiple deaths occurred from a single act of resisting. Because our decision is premised on the statute, we need not conduct a double-jeopardy analysis. Our resisting law

enforcement statute does not create a new offense for each death that occurs. Instead, it enhances the underlying resisting law enforcement conviction's degree in circumstances where the offense is committed using a vehicle in a manner that causes another person's death. Without explicit authorization for multiple convictions arising out of the same act, we cannot find that Paquette's three felony resisting law enforcement convictions can stand. Accordingly, we reverse the trial court as to two of the three convictions for felony resisting law enforcement. Since one of Paquette's other offenses allows for multiple convictions based on a single act of operating a vehicle, we remand for the trial court to enter convictions under that statute for all victims and instruct the trial court to sentence accordingly.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Mark A. Bates
Schererville, Indiana

Thomas W. Vanes
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew J. Kobe
Tyler G. Banks
Deputy Attorneys General
Indianapolis, Indiana