## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2019, 10:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.R.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

February 4, 2019

Court of Appeals Case No.
18A-JV-1783

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Scott Stowers, Magistrate

Trial Court Cause No.
49D09-1802-JD-197

**Bradford, Judge.**

# Case Summary

On February 2, 2018, R.R. inserted herself into a situation involving her boyfriend and several members of the Indianapolis Public Schools ("IPS") police force. She was subsequently alleged to have committed what would be the following crimes if committed by an adult: (1) Count One – Level 6 felony intimidation, (2) Counts Two and Three – Level 6 felony resisting law enforcement, and (3) Counts Four through Six – Level 6 felony battery against a public safety official. Following a hearing, the juvenile court adjudicated R.R. delinquent after entering true findings as to the first three counts and not-true findings as to the remaining counts.

R.R. challenges the delinquent adjudication, arguing that the evidence was insufficient to sustain the true findings and that she could not have been found to have committed two separate acts of what would be resisting law enforcement if she were an adult. Consistent with a recent decision of the Indiana Supreme Court, we conclude that because R.R. was involved in only one altercation with police, she may only be found delinquent for committing one act of what would be resisting law enforcement if committed by an adult. We further conclude that the evidence is sufficient to sustain the juvenile court's true findings for Counts One and Two. We therefore affirm in part, reverse in part, and remand the matter to the juvenile court with instructions for the juvenile court to vacate the true finding relating to Count Three.

# Facts and Procedural History

[3] On February 2, 2018, Sheldon Floyd, an assistant principal at IPS's Arsenal Technical High School ("Arsenal Tech"), was summoned by a teacher to handle a classroom incident involving R.R.'s boyfriend, Q.A. Floyd requested assistance from IPS police officers. R.R. approached while Floyd and the officers were talking with Q.A. Floyd instructed R.R. to "go to class, do not follow" as he, Q.A., and the officers made their way to the Dean's office. Tr. p. 9. R.R. did not follow Floyd's instructions.

[4] After entering the Dean's office, Floyd and IPS police officers John Dunker, Fred McIntire, and Kevin Rogers attempted to calm Q.A. Shortly thereafter, R.R. aggressively entered the office, inserting herself into the situation. As R.R. entered, Q.A. became more agitated, balling his hands into fists and calling Floyd a "bi[***] as[*] ni[****]." Tr. p. 35. Officer Rogers restrained R.R. against a far wall in the office and instructed her not to interfere.

[5] After Officer Rogers restrained R.R., she pushed away from him and the pair hit another wall before falling to the ground. R.R. was kicking, punching, and rolling around on the ground. She refused numerous instructions to put her hands behind her back. At some point during the altercation, she threatened to "cut" Officer Rogers. Tr. p. 37. Officers Dunker and Rogers were eventually able to subdue and handcuff R.R. During the struggle, Officer Rogers suffered a cut between his ring and pinkie fingers.

[6] On February 13, 2018, the State filed a delinquency petition alleging that R.R. committed the following delinquent acts: (1) Count One – Level 6 felony

intimidation, (2) Counts Two and Three – Level 6 felony resisting law enforcement, and (3) Counts Four through Six – Level 6 felony battery against a public safety official. The juvenile court adjudicated R.R. to be a delinquent child following a June 1, 2018 evidentiary hearing, entering true findings on Counts One through Three and not true findings on Counts Four through Six. R.R. was subsequently placed on probation.

# Discussion and Decision

## I. Multiple Counts of Resisting Law Enforcement

[7] The Indiana Supreme Court recently held that "the resisting law enforcement statute, as written, was intended to permit only one conviction for each act of resisting[.]" *Paquette v. State*, 101 N.E.3d 234, 239 (Ind. 2018). The Court reasoned that "resisting law enforcement is inherently an offense against authority, not the individual officers. So, whether a defendant resists one officer or twenty-five officers, the offense remains the same." *Id.* at 239–40. Stated differently, "the offense that involves a single affray with police will continue to be a single harm to the peace and dignity of the State, regardless of how many other people are [injured]." *Id.* at 240.

[8] In this case, the juvenile court determined that R.R. committed two counts of what would be Level 6 felony resisting law enforcement if she were an adult. It is undisputed that both of these counts stemmed from a single altercation with police. As such, pursuant to the Indiana Supreme Court's opinion in *Paquette*, R.R. could only have been found to have committed one of these counts.

# II. Sufficiency of the Evidence

R.R. challenges the sufficiency of the evidence to sustain the juvenile court's true findings.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted).

## A. Count One

R.R. challenges the juvenile court's true finding that she committed what would be Level 6 felony intimidation if committed by an adult. Indiana Code section 35-45-2-1(a)(2) provides that "[a] person who communicates a threat to another person, with the intent: … that the other person be placed in fear of retaliation for a prior lawful act … commits intimidation, a Class A misdemeanor." However, the offense is a Level 6 felony if "the person to whom the threat is

communicated … is a law enforcement officer[.]" Ind. Code § 35-45-2-1(b)(1)(B)(ii). Thus, in order to prove that R.R. committed what would be Level 6 felony intimidation if committed by an adult, the State was required to prove that R.R. communicated a threat to a law enforcement officer with the intent that the officer would be placed in fear of retaliation for a prior lawful act.

[11]    "Whether a communication is a threat is an objective question for the trier of fact." *Ajabu v. State*, 677 N.E.2d 1035, 1041 (Ind. Ct. App. 1997), *trans. denied*. "Although direct communication to the intended victim is not required under the [i]ntimidation statute, communication such as to influence conduct or place a person in fear of retaliation is required." *Soucy v. State*, 22 N.E.3d 683, 686 (Ind. Ct. App. 2014). In determining whether the communication of a threat was sufficient to prove intimidation, we consider whether the individual knew or had good reason to believe that their threat would reach the threatened individual. *See generally Ajabu*, 677 N.E.2d at 1043 (providing that the evidence supported the conclusion that Ajabu used the media to communicate threats that he knew or had good reason to believe would reach the threatened individuals).

[12]    With regard to Count One, the delinquency petition alleged as follows:

> On or about the 2nd day of February, 2018, [R.R.] did communicate a threat to another person, to wit: Kevin Rogers, a person who is a law enforcement officer, to wit: to cut Officer Rogers, with the intent that said Kevin Rogers, be placed in fear

of retaliation for a prior lawful act, to wit: having restrained [R.R.].

Appellant's App. Vol. II p. 17. The evidence clearly establishes that the threat of retaliation was made to Officer Rogers while he and R.R. were engaged in a struggle.

[13] Officer Rodgers restrained R.R. against a wall in the school administrator's office after R.R., in an aggressive manner, attempted to insert herself into a situation involving a school administrator, IPS police officers, and Q.A. After Officer Rogers restrained R.R. against the wall, R.R. pushed Officer Rogers and they "ended up going into another wall, before landing on the ground." Tr. p. 72. Once on the ground, the struggle continued as R.R. attempted to fight off Officer Rogers's attempts to place her in handcuffs. Officer Dunker testified that he assisted Officer Rogers in restraining R.R. after he observed Officer Rogers struggling with R.R. and heard R.R. threaten to "cut" Officer Rogers. Tr. p. 37. Specifically, Officer Dunker heard R.R. say "I'll cut you" to Officer Rogers during the struggle. Tr. p. 37.

[14] R.R. challenges the sufficiency of the evidence to prove that the threat was made in retaliation for a prior lawful act, arguing that because the threat was made during the struggle between she and Officer Rogers, it was made contemporaneously with Officer Rogers's lawful act of restraining her. The threat was made during a physical struggle between R.R. and Officer Rogers. The evidence indicates that R.R. initiated this struggle after Officer Rogers lawfully restrained her against the wall. One may therefore reasonably infer

that R.R. made the statement with the intent to place Officer Rogers in fear for his safety in retaliation for his prior lawful act of restraining her.

[15] Furthermore, we are unconvinced by R.R.'s claims that the evidence is insufficient to sustain the juvenile court's true finding merely because the record does not establish that Officer Rogers heard the threat. Neither party asked Officer Rogers during the evidentiary hearing if he heard the threat. However, the record indicates that R.R. was in close proximity to and was engaged in a physical struggle with Officer Rogers when she made the threat. The threat was overheard by Officer Dunker, who was standing nearby. Because R.R. made the threat at a volume level that was loud enough that Officer Dunker could hear it, one may reasonably infer that it was made loudly enough that Officer Rogers could have heard it as well. These facts support the reasonable inference that when R.R. communicated her threat, she had good reason to believe that her threat would reach Officer Rogers. As such, we conclude that the evidence is sufficient to sustain the juvenile court's true finding. R.R.'s challenge to the sufficiency of the evidence effectively amounts to a request that we reweigh the evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) ("We do not reweigh the evidence or assess the credibility of witnesses.").

## B. Count Two

[16] R.R. also challenges the juvenile court's true finding that she committed what would be Level 6 felony resisting law enforcement if she were an adult. Indiana Code section 35-44.1-3-1(a)(1) provides that: "[a] person who knowingly or

intentionally … forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties … commits resisting law enforcement, a Class A misdemeanor[.]" However, the offense is a Level 6 felony if while committing the offense, the person "inflicts bodily injury on or otherwise causes bodily injury to another person[.]" Ind. Code § 35-44.1-3-1(b)(1)(B). Thus, in order to prove that R.R. committed what would be Level 6 felony resisting law enforcement if committed by an adult, the State was required to prove that R.R. inflicted bodily injury on Officer Rogers while forcibly resisting, obstructing, or interfering with Officer Rogers while he was engaged in the execution of his law enforcement duties.

[17] With regard to Count Two, the delinquency petition alleged as follows:

> On or about the 2nd day of February, 2018, [R.R.] did knowingly or intentionally forcibly resist, obstruct or interfere with a law enforcement officer, or a person assisting a law enforcement officer, to wit: Kevin Rogers, while the officer was lawfully engaged in the execution of his duties as a law enforcement officer and [R.R.] inflicted bodily injury on Kevin Rogers, to wit: a cut to Officer Rogers'[s] hand.

Appellant's App. Vol. II, p. 17. R.R. argues that the evidence is insufficient to prove that she knowingly or intentionally inflicted a bodily injury on Officer Rogers. We disagree. During the altercation, R.R. threatened to cut Officer Rogers. The evidence establishes that Officer Rogers suffered a cut between his ring and pinkie fingers during this altercation with R.R. One may therefore

reasonably infer that R.R. intended to complete the threatened act and was responsible for Officer Rogers's injury.

[18] While not raised as an argument in Count One, R.R. also argues that the State failed to establish that she had "reason to know that [Officers] Dunker, Rogers and McIntire were law enforcement officers." Appellant's Br. p. 20. Specifically, R.R. asserts that "[t]he State presented no evidence whether the [IPS] police officers at [Arsenal Tech] that day were uniformed police officers, displayed a badge or had orally identified themselves as police officers." Appellant's Br. p. 20. Thus, R.R. claims that "[o]n the record presented, it is possible that R.R. did not know the men were police officers, rather than security guards, school-liaison officers, school resource officers, or other adults employed at the high school who do not fall under the gambit of the resisting law enforcement statute."[1] Appellant's Br. p. 21 (citing *K.W. v. State*, 984 N.E.2d 610, 613 (Ind. 2013) (distinguishing between off-duty law enforcement officers acting as liaison or resource officers and law enforcement officers performing law-enforcement duties and providing that the resisting law enforcement statute only applies to the latter)).

[19] While the record indicates that Officers Dunker, McIntire, and Rogers were law enforcement officers performing law enforcement duties on the date in

---

[1] While the quoted language from R.R.'s appellate brief includes the terms security guards in arguing that the State failed to prove that she resisted law enforcement, we note that authority cited by R.R. in support does not include any mention of the security guards.

question, the record does not indicate whether the officers were wearing full police uniforms or badges or whether they introduced themselves as police officers when they approached R.R. Officers Dunker, McIntire, and Rogers each testified, however, that they had become familiar with R.R. and her boyfriend through the course of their employment as IPS police officers at Arsenal Tech. It is reasonable to infer that if the officers were familiar with R.R., she was also familiar with them.[2] This inference is supported by the fact that at the time of the altercation, R.R. was in her second year at Arsenal Tech and each of the officers had been stationed at Arsenal Tech for some time.[3] Furthermore, even assuming that R.R. did not initially know that Officers Dunker, McIntire, and Rogers were law enforcement officers, R.R. was instructed to stop resisting at least five different times. The first of these instructions should have been sufficient to alert her to the fact that Officers Dunker, McIntire, and Rogers were law enforcement officers and that continued resistance could lead to possible juvenile exposure. In light of the totality of the evidence coupled with our deferential standard of review, we

---

[2] While we agree with R.R. that the State could easily have questioned the officers about whether they were wearing their police uniforms or badges or otherwise identified themselves as police officers, we must note that in challenging the juvenile court's true finding for intimidation, R.R. does not argue that Officer Rogers's act of restraining her was not lawful. This fact arguably concedes that R.R. knew that Officer Rogers was a police officer as it would not have been lawful for a random individual to restrain her against a wall. In addition, R.R. did not claim below that she did not know that Officers Dunker, McIntire, and Rogers were law enforcement officers.

[3] Officer Dunker had been with the IPS police for "[a]pproximately six and a half years," Officer McIntire for "[t]wenty-seven years," and Officer Rogers for approximately one year. Tr. pp. 34, 50, 70. Thus, it would have been clear simply by looking at the officers that they were not fellow students but rather were some type of public-safety figure whose instructions should be followed.

conclude that the evidence was sufficient to sustain the juvenile court's determination that R.R. committed what would be Level 6 felony resisting law enforcement if she were an adult. Again, R.R.'s challenge to the sufficiency of the evidence effectively amounts to a request that we reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

# Conclusion

[20] We conclude that the evidence is sufficient to sustain the juvenile court's true findings for Counts One and Two. Further, given our conclusion that R.R. may only be found to have committed one act of resisting law enforcement, we need not consider the sufficiency of the evidence to sustain the juvenile court's true finding for Count Three. We affirm the juvenile court's determination that R.R. was delinquent for committing what would be Level 6 felony intimidation and one count of Level 6 felony resisting law enforcement if committed by an adult. However, we remand the matter to the juvenile court with instructions for the court to vacate its true finding for Count Three.

[21] The judgment of the juvenile court is affirmed in part, reversed in part, and remanded with instructions.

Bailey, J, and Brown, J., concur.