## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 06 2020, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Schererville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian L. Paquette, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 6, 2020 <br><br> Court of Appeals Case No. 20A-CR-273 <br><br> Appeal from the Pike Circuit Court <br><br> The Honorable Jeffrey L. Biesterveld, Judge <br><br> Trial Court Cause No. 63C01-1602-F3-73 |

**Najam, Judge.**

# Statement of the Case

Brian Paquette appeals his sentence following his convictions for resisting law enforcement, as a Level 3 felony; two counts of operating a vehicle causing death, as Level 4 felonies; and operating a vehicle causing serious bodily injury, as a Level 6 felony. Paquette presents two issues for our review:

1. Whether the trial court abused its discretion when it sentenced him.

2. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts and Procedural History

In a prior appeal, our Supreme Court set out the facts and procedural history as follows:

> On the evening of February 2, 2016, Indiana Police State Trooper James Manning ("Trooper Manning") was parked on the northbound shoulder of I-69, near Petersburg, Indiana. A motorist pulled over and informed Trooper Manning that he observed a blue Chevy Tahoe driving northbound on the southbound lanes of the interstate. Trooper Manning activated his patrol vehicle's emergency signals—the lights and siren—and gave chase, driving northbound on I-69. Shortly thereafter, he spotted a blue SUV driving on the wrong side of the road. Officers later learned that Brian L. Paquette was driving that vehicle.

As Trooper Manning approached the blue SUV, he aimed his spotlight at the fleeing vehicle. Trooper Manning then pulled into the median, and Paquette seemed to slow down. Instead of coming to a full stop, however, Paquette made a U-turn onto the northbound lane and continued driving on the wrong side of the road, this time heading south. Trooper Manning immediately veered onto the southbound road and followed Paquette, once again shining his spotlight at the blue SUV.

At the same time, several passenger vehicles traveled north on the northbound road. Among those was a vehicle occupied by Jason and Samantha Lowe, who were returning to their home in Fishers, Indiana after visiting Samantha's mother at an Evansville hospital. Also traveling northbound on I-69 were Stephanie Molinet and Autumn Kapperman, who were riding in a Ford Focus to pick up Kapperman's sister and her newly-born niece from Riley Hospital. Kapperman was expecting a child of her own at the time of the incident.

Trooper Manning followed in pursuit and Paquette continued southbound, driving between two northbound lanes. Within two miles of making the U-turn, Paquette's SUV collided head-on with Molinet's Ford Focus, striking the passenger side where Kapperman was seated. Molinet, Kapperman, and Kapperman's unborn child died as a result of the crash. The impact of the collision caused Paquette's Chevy Tahoe to flip over and land on the driver's side of the Lowe[s'] vehicle, instantly killing Jason Lowe.

Paquette survived the crash. While officers waited for firefighters to extract Paquette from his vehicle, Paquette told an officer that, at the time of the crash, he believed he was being chased by farmers through a field. He also believed he was carrying a female passenger, but officers found no evidence of another passenger at the crash site.

The State charged Paquette with a total of eleven offenses. Among those were three counts for each of the following: resisting law enforcement by fleeing in a vehicle causing death, a Level 3 felony; operating a vehicle with methamphetamine in his blood causing death, a Level 4 felony; and reckless homicide, a Level 5 felony. Each duplicative count related to one of the three deceased victims. Paquette was also charged with operating a vehicle with methamphetamine in his body causing serious bodily injury to Samantha Lowe, a Level 6 felony; and possession of methamphetamine, a Level 6 felony.

Paquette agreed to plead guilty to all charges, but reserved the right to ask the court to enter only one conviction and sentence for the felony resisting law enforcement charge. Paquette argued that he engaged in only one act of resisting, thus conviction on all three resisting law enforcement felony charges—one for each deceased victim—violated a state and federal prohibition on double jeopardy. On that issue, the trial court ruled against Paquette, finding that conviction and sentence on all three counts of resisting law enforcement was not barred by double-jeopardy protections.

*Paquette v. State*, 101 N.E.3d 234, 235-36 (Ind. 2018) ("*Paquette II*"). On direct appeal to this Court, Paquette had asserted that "Indiana's resisting-law-enforcement statute . . . allows only a single resisting conviction under the facts of this case and that the trial court therefore erred by entering three convictions and sentences against him." *Paquette v. State*, 79 N.E.3d 932, 933-34 (Ind. Ct. App. 2017) ("*Paquette I*"), *trans. granted*, 101 N.E.3d 234. We agreed and held that "he [could] be convicted and sentenced on only one count of resisting law enforcement." *Id.* at 936. On the State's petition to transfer, our Supreme Court affirmed this Court and remanded to the trial court with instructions.

[4] On remand, "the trial court entered separate convictions and sentences on all three Level 3 felony counts but merged the second and third counts into the first count. The trial court also entered convictions on all three Level 4 felony counts." *Paquette v. State*, 131 N.E.3d 166, 167 (Ind. 2019) ("*Paquette III*"). Paquette appealed, and our Supreme Court ordered the trial court to "impose judgment of conviction for the following: one count of Level 3 felony resisting law enforcement causing death [("Count I")]; two counts of Level 4 felony operating causing death [("Counts V and VI")]; and one count of Level 6 felony operating causing serious bodily injury [("Count XI")]; and to sentence accordingly." *Id.* at 168.

[5] On remand, the trial court entered judgment of conviction accordingly and sentenced Paquette as follows: sixteen years for Count I; twelve years for Count V; twelve years for Count VI; and two and a half years for Count XI. The court ordered that the sentences would run consecutively, for an aggregate term of forty-two and one-half years executed. This appeal ensued.

## Discussion and Decision

### Issue One: Abuse of Discretion

[6] Paquette first contends that the trial court abused its discretion when it sentenced him. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[7] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007)).

[8] The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5 (2019). The sentencing range for a Level 4 felony is two to twelve years, with an advisory sentence of six years. I.C. § 35-50-2-5.5. And the sentencing range for a Level 6 felony is six months to two and a half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7. The trial court imposed the maximum sentence for each count and ordered the sentences to run consecutively. In its written sentencing order, the trial court stated as follows:

> The factors considered by the Court in determining the appropriate sentence in this cause and whether the sentence should be ordered to be served concurrently or consecutively are as follows:

(1)  That the harm suffered by the victims was significant and greater than the elements necessary to establish the offense. Pain and emotional stress suffered by victim, Samantha Lowe, was and continues to be great.  Pain suffered by victim, Stephanie Molinet prior to her death was significant.

(2)  Autumn Kapperman was pregnant at the time of her death.

(3)  The Court considers the Victim Impact Statements made part of the PreSentence Investigation.

(4)  The Defendant lacks remorse for his actions.

(5)  That there are four (4) separate and distinct victims in this cause.

The Court finds the following mitigating factors:

(1)  Court considers the Defendant's lack of prior juvenile or criminal history.

(2)  Court considers that the Defendant has plead[ed] guilty saving the Court's time and resources.

The Court considers that pursuant to I.C. [§] 35-50-1-2(a), subsections 5, 14, 15 and 17, the offenses for which the Court sentences the Defendant for Counts I, V, VI, and XI are "crimes of violence."

The Court considers the IRAS overall assessment as low risk to reoffend but does consider that Defendant's history of substance abuse and his education, employment and financial situation are considered to be high risk.

The Court considers the Defendant's Sentencing Memorandum filed on November 21, 2016.

The Court considers that victims have the right to be treated with fairness, dignity and respect and are to be free from intimidation, harassment and abuse throughout the criminal justice process. The Court takes this premise very seriously and strongly considers this when determining its sentence.

In assessing all these factors[,] the Court considers that the aggravating factors significantly exceed any mitigating factors.

As the direct result of the Defendant's actions in this cause the Court considers most relevant[:]

We have children who have lost their parent. Parents who have lost their children. A wife who watched her husband taken from her in a split second who continues to endure physical and emotional injuries and who may never be whole again. We have a child [who] will never be born and the family members that will never know the love of that child.

For this Court to order any less than the sentence now imposed, it would seriously depreciate the value of the lives taken and the families affected as the direct result of the Defendant's actions.

Appellant's App., Vol. 2 at 19-21.[1]

[9] Paquette asserts that the trial court abused its discretion when it sentenced him because, he maintains, the court relied upon "impermissible aggravators" and "fail[ed] to find mitigators supported by the record[.]" Appellant's Br. at 13. In particular, Paquette contends that the following aggravators are improper: the

---

[1] There are three appendices included in the record on appeal: one appendix for the instant appeal and one each for the two prior appeals. However, we only cite to the appendix for the instant appeal.

harm suffered by the victims; reliance on the victim impact statements; his lack of remorse; the number of victims; and that a lesser sentence would depreciate the seriousness of the crimes. And Paquette contends that the court should have found the following mitigators: the crime was a result of circumstances unlikely to recur; he is likely to respond affirmatively to probation or a lesser sentence; and his "character and attitudes indicate he is unlikely to commit another crime." *Id.* at 19. We address each contention in turn.

### *Aggravator: Harm Suffered by Victims*

[10] Paquette acknowledges that the seriousness of the victims' injuries "may be considered as an aggravating circumstance." *Id.* at 14 (citing *Boyd v. State*, 546 N.E.2d 825, 826 (Ind. 1989)). But he asserts that "the emotional and physiological effects are inappropriate aggravating factors unless the impact, harm, or trauma is greater than that usually associated with the crime." *Id.* (citing *Thompson v. State*, 793 N.E.2d 1046, 1053 (Ind. Ct. App. 2003)). In particular, he maintains that "the advisory sentence is presumed to take the pain and suffering of the victims into consideration because elements of each crime encompassed either the death of the victim after the collision or the serious bodily injury suffered by Samantha Lowe." *Id.* (citing *Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997)).

[11] We agree with the State that the trial court properly found aggravating the harm suffered by the victims, which the court described as "greater than the elements necessary to establish the offense[s]." Appellant's App., Vol. 2 at 19. For instance, Molinet did not die instantly. Trooper Manning testified that he

found Molinet trapped in her vehicle "cr[ying] out in pain." Tr. Vol. 2 at 85. First responders had to "cut out" Molinet from the vehicle, and she was transported by helicopter to a hospital, where she died. *Id.* at 89. In addition, Samantha Lowe testified that she has "pain every day from the physical injuries that resulted from the crash," including a concussion and broken bones, but that it is "the emotional injuries that have caused the most pain." Tr. Vol. 3 at 67. The trial court did not abuse its discretion when it found aggravating the harm suffered by the victims.

### *Aggravator: Victim Impact Statements*

[12] Paquette avers that a trial court may find a victim impact statement aggravating only "when the defendant's actions had an impact on the other persons in an especially destructive nature, one that is not normally associated with the offense, and where this impact was foreseeable by the defendant." Appellant's Br. at 15 (citing *Bacher*, 686 N.E.2d at 801). Paquette makes no contention that the impact on the victims was not foreseeable by him. His sole contention on this issue is that "there is nothing especially destructive that is not normally associated with" the charged offenses here. *Id.*

[13] We cannot agree with Paquette's characterization of the impact of his offenses on the victims and their families. Samantha Lowe, who lost her husband because of Paquette's offenses, wrote a four-page, single-spaced victim impact statement outlining how she and her two children have been impacted by the loss of their husband and father. Molinet's mother described her grief at the loss of her daughter, and she stated that there were 1,500 mourners at Molinet's

funeral. Finally, Kapperman's mother, Dana Wise, whose statement consisted of more than four pages, single-spaced, described her grief in losing both her daughter and her unborn granddaughter, who was to be named MaKenzie. Wise also described her grief for Kapperman's orphaned child Bryleigh, who was only one year old at the time of Kapperman's death. The trial court did not err when it found the victim impact statements to be an aggravating factor.

*Aggravator: Lack of Remorse*

[14] Paquette asserts that, contrary to the trial court's finding, he showed remorse for his actions. In support, he cites a single statement he made at the sentencing hearing, namely, that he "need[ed] to [apologize] and express [his] sorrow to the victims and each family member for the pain [he had] caused them." Tr. Vol. 2 at 207. Paquette claims that it "wasn't fair to take what [he] said during his [pre-sentence] interview that 'it is what it is' as a show of no remorse." Appellant's Br. at 16. However, it is well settled that we give substantial deference to the trial court's evaluation of remorse because the trial court has the ability to directly observe the defendant and is in the best position to determine whether the remorse is genuine. *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind. Ct. App. 2004). We cannot say that the trial court erred when it found his lack of remorse to be an aggravating factor.

*Aggravator: Multiple Victims*

[15] Paquette contends that the fact of multiple victims "is [a] proper aggravator which may be used to impose consecutive sentences, or enhanced sentences, but not both." Appellant's Br. at 17. This contention is without merit. As our

Supreme Court has stated, "generally, multiple victims justify the imposition of enhanced *and* consecutive sentences." *Sanchez v. State*, 938 N.E.2d 720, 723 (Ind. 2010) (emphasis added).

### Aggravator:  Depreciate the Seriousness of the Crimes

Paquette asserts that, because there is no evidence that the court had "considered imposing a sentence shorter than the advisory term," the court improperly found aggravating the fact that a reduced sentence would depreciate the seriousness of the crimes.  Appellant's Br. at 18.  Indeed, our courts have consistently held that, where a court has not considered imposing a sentence less than the advisory, this is an improper aggravator.  *See, e.g.*, *Blanche v. State*, 690 N.E.2d 709, 715 (Ind. 1998).  However, "we have held that the improper use of this aggravating circumstance does not invalidate a sentence enhancement where other valid aggravating circumstances exist."  *Id.*  Here, while there is no evidence that the court considered imposing sentences less than the advisory sentence on any count, there are ample other aggravators to support Paquette's sentence.  *Id.*

### Mitigator:  Circumstances Unlikely to Recur

Paquette maintains that, given his lack of criminal history and IRAS score showing a low risk to reoffend, the court erred when it did not find mitigating that the crimes were the result of circumstances unlikely to recur.  The finding of mitigating circumstances is within the discretion of the trial court.  *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000).  An allegation that the trial court

failed to identify or find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.* at 249. The trial court is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance. *Id.*

[18] Paquette's argument on this issue is three sentences long. He has not persuaded us that the evidence in support of this mitigator is both significant and clearly supported by the record. Moreover, given the fact that Paquette committed the instant offense while high on methamphetamine, coupled with his history of substance abuse, we cannot say that the trial court erred when it did not find this mitigator.

*Mitigator: Likely to Respond Affirmatively to Probation or Lesser Sentence*

[19] Paquette makes no cogent argument in support of his bare assertion that the court improperly "overlooked" this statutory mitigator. Appellant's Br. at 19. Accordingly, Paquette has waived this issue for our review. To the extent Paquette suggests that his lack of criminal history supports this mitigator, again, he has not persuaded us that the evidence in support of this mitigator is both significant and clearly supported by the record.

*Mitigator: Unlikely to Commit Another Crime*

[20] Paquette contends that the trial court improperly "overlooked" this statutory mitigator. *Id.* His sole argument in support of this contention is that he had a low IRAS score. We cannot say that the trial court erred when it did not find this mitigator.

In sum, with one exception, the trial court did not identify improper aggravating circumstances, and the one improper aggravator does not warrant reversal. And the trial court did not abuse its discretion when it did not find certain mitigators.

### Issue Two: Appellate Rule 7(B)

Paquette also contends that his sentence is inappropriate in light of the nature of the offenses and his character. As our Supreme Court has made clear:

> The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision. Ind. Const. art. 7, §§ 4, 6; *Serino v. State*, 798 N.E.2d 852, 856 (Ind. 2003). This authority is implemented through Indiana Appellate Rule 7(B), which permits an appellate court to revise a sentence if, after due consideration of the trial court's decision, the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Serino*, 798 N.E.2d at 856. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The burden is on the defendant to persuade the reviewing court that the sentence is inappropriate. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

*Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018) (per curiam).

Further:

> Indiana Appellate Rule 7(B) is a "rare" avenue for appellate relief that is reserved "for exceptional cases." *Livingston v. State*, 113 N.E.3d 611, 612-13 (Ind. 2018) (per curiam). Even with Rule 7(B), "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable

deference." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015) (quoting *Cardwell*, 895 N.E.2d at 1222). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* Absent such a "sufficiently compelling" evidentiary basis, we will not "override the decision of . . . the trial court." *Id.*

*Sorenson v. State*, 133 N.E.3d 717, 728 (Ind. Ct. App. 2019) (alteration and omission original to *Sorenson*), *trans. denied*.

[24] Paquette argues that the nature of the offenses does not warrant the maximum possible aggregate sentence. Rather, he "suggests that the nature of these offenses is the conduct anticipated by the legislature when it enacted the criminal statutes" and established the advisory sentences for each of his offenses. Appellant's Br. at 24. We cannot agree. Paquette, high on methamphetamine, led police on a chase the wrong way on a highway for almost two miles before he collided with Molinet's car with such force that it flipped over and landed on the Lowes' vehicle. Molinet, Kapperman, Kapperman's unborn child, and Jason Lowe were killed as a result, and Samantha Lowe was seriously injured. The families of the victims suffered the loss of their parents, children, and a grandchild. We cannot say that Paquette's sentence is inappropriate in light of the nature of the offenses.

[25] Paquette also contends that his maximum sentence is inappropriate in light of his character because he is not "the worst of the worst offenders." Appellant's

Br. at 27. He points out that he had been gainfully employed but had to quit his job shortly before the instant offenses in order to take care of his dying father, at the time of the offenses he had suffered a drug relapse due to his father's death, he has no criminal history, and he showed remorse.

[26] We first address Paquette's contention that he is not "the worst of the worst." *Id.* As we have observed,

> [a]lthough the maximum possible sentences are generally most appropriate for the worst offenders, this rule is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender.

*Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). By stating that maximum sentences are ordinarily appropriate for the "worst offenders," we refer generally to the class of offenses and offenders that warrant the maximum punishment, which encompasses a considerable variety of offenses and offenders. *Id.* Accordingly, "[w]e concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." *Wells v. State*, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009), *trans. denied*.

[27] Paquette's maximum sentence is not inappropriate. While Paquette was understandably grieving his father's death, that he chose to use methamphetamine to self-medicate reflects very poorly on his character. And

Paquette's lack of remorse in the face of the devastation he inflicted on *three families*, including the loss of an unborn child, is contemptible.  Finally, the court heard evidence that Paquette had discussed with his mother a plan to deplete his assets "so that the families wouldn't take it[.]"  Tr. Vol. II at 191. We cannot say that Paquette's sentence is inappropriate in light of his character.

[28]  Affirmed.

Kirsch, J., and Brown, J., concur.