# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2020, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon Blaine Evans,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 28, 2020<br><br>Court of Appeals Case No.<br>20A-CR-525<br><br>Appeal from the Huntington<br>Superior Court<br><br>The Honorable Jennifer E.<br>Newton, Judge<br><br>Trial Court Cause No.<br>35D01-1908-F2-250 |

**Altice, Judge.**

# Case Summary

[1] Brandon Evans appeals his convictions for conspiracy to commit dealing in methamphetamine, a Level 2 felony, and conspiracy to commit dealing in heroin, a Level 4 felony, claiming that the evidence was insufficient to support his convictions, that convicting him of both offenses violated the prohibition against double jeopardy, and that his sentence was inappropriate.

[2] We affirm.

# Facts and Procedural History

[3] On May 14, 2019, Andrews Town Marshal Austin Bullock received information regarding the whereabouts of Evans who was the subject of an arrest warrant. Marshal Bullock learned that Evans was dealing drugs in the area and was driving a Chevrolet Colorado.

[4] Later that day, Marshal Bullock spotted a vehicle that matched the Colorado's description. Marshal Bullock identified Evans as the driver, stopped the vehicle, and arrested Evans on the outstanding warrant. During a search incident to the arrest, Evans was found in possession of $1000 dollars in cash. He was then transported to the Huntington County Jail.

[5] Marshal Bullock had previously worked as a special deputy at the Huntington County Jail and was familiar with the inmate calling system, in that he knew that each inmate is assigned a Personal Identification Number (PIN) that permits the jail staff to match phone calls with the specific inmate. The system documents who is on the phone and whether the call is outgoing or incoming. Marshal Bullock monitored Evans's telephone calls at the jail, and later downloaded them.

[6] While Evans was incarcerated, he spoke by phone with Erica Wrisk, Rodney Smith, Troy Martin, and David Odham on numerous occasions. Law enforcement officials learned that Wrisk had been living at 808 Mill Street and 686½ High Street, in Wabash. During various telephone conversations, Evans referenced an eyeglass case at one of Wrisk's residences that contained drugs. During the calls, Evans and the others discussed the types of drugs—including methamphetamine and heroin, pricing, and quantities of the drugs that they intended to sell. Marshal Bullock relayed the information he learned from the phone conversations to Wabash County Drug Task Force (Task Force) personnel.

[7] On May 20, 2019, Task Force officers conducted surveillance at the High Street residence. At some point, they observed Wrisk leave that house and go to the Mill Street residence. Wrisk entered the house with a backpack, where she remained inside for about five minutes. After observing Wrisk return to her vehicle without the backpack, law enforcement officers obtained a search warrant for both residences.

[8] When the police arrived at the High Street house, Wrisk and Martin were inside. One of the officers collected and photographed various items indicative of narcotics usage and dealing, including large sums of currency, multiple digital scales, cell phones, syringes, a spoon, and burnt residue on a syringe. The officers also seized ledgers that listed the names of drug purchasers and the amount of drugs they had purchased. A field test on some white residue inside a ziplock bag revealed the presence of methamphetamine.

[9] The officers found the Mill Street residence unoccupied and unlocked. When executing the warrant, the officers seized a draw string bag from under a mattress that contained about 230 grams of methamphetamine. They also recovered discovered 3.7 grams of heroin in a plastic wrapper inside the eyeglass case that Wrisk and Evans had discussed.

[10] Cell phones were also seized and the officers discovered that Martin's phone contained numerous Facebook messenger threads that involved discussions with Evans and the others regarding heroin and methamphetamine sales and delivery. In addition to the 3.7 grams of heroin found in the eyeglass case, laboratory analysis confirmed that the officers seized a total of 223.29 grams of methamphetamine and another 2.89 grams of heroin.

[11] On August 16, 2019, Evans was charged with Count I, conspiracy to commit dealing in methamphetamine, a Level 2 felony; and Count II, conspiracy to commit dealing in heroin, a Level 4 felony. The State also alleged that Evans was a habitual offender.

[12] Following a jury trial on January 31, 2020, Evans was found guilty as charged, and he admitted to being a habitual offender. Evans was subsequently sentenced to thirty years of incarceration on Count I that was enhanced by fifteen years on the habitual offender count. Evans was sentenced to twelve years on Count II that was ordered to run concurrently with the sentence in Count I. Thus, Evans was ordered to serve an aggregate sentence of forty-five years, and he now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

[13] Evans claims that the evidence was insufficient to support his convictions. Specifically, Evans contends that his convictions cannot stand because the State did not present any "independent evidence" or "overt acts," that established his guilt. *Appellant's Brief* at 15.

[14] When reviewing sufficiency of the evidence claims, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). We consider only the evidence supporting the verdict and any reasonable inferences that can be drawn therefrom. *Morris v. State,* 114 N.E.3d 531, 535 (Ind. Ct. App. 2018), *trans. denied.* Conflicting evidence is considered most favorable to the verdict. *Silvers v. State,* 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). We will affirm if there is substantial evidence of probative

value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Bailey,* 907 N.E.2d at 1005.

[15] Our conspiracy statute provides that "[a] person conspires to commit a felony when, with intent to commit the felony, [he] agrees with another person to commit the felony" and "either the person or the person with whom he . . . agreed performs an overt act in furtherance of the agreement." Ind. Code § 35-41-5-2. To convict Evans of Count I, the State was required to prove that Evans "on or between May 14, 2019 and May 20, 2019, in Huntington County, [Evans], with intent to commit Dealing in Methamphetamine, agreed with . . . Erica Wrisk and/or Troy Martin and/or Richard Smith and/or David Odham, to deliver methamphetamine, and the other person performed an overt act in furtherance of the agreement, and the amount of the drug involved was at least ten (10) grams." I.C. § 35-41-5-2; Ind. Code § 35-48-4-1.1. Count II required the same, except the State was required to prove that the drug was heroin that weighed at least three grams but less than seven grams.

[16] Our Supreme Court has summarized the nature of the evidence required to prove a conspiracy as follows:

> A conspiracy entails an intelligent and deliberate agreement between the parties. But the state is not required to prove the existence of a formal express agreement. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense. . . . This may be inferred from the acts committed and the circumstances surrounding the defendant's involvement.

> Understandably then, a conviction for conspiracy may, and often will, rest solely on circumstantial evidence.

*Minniefield v. State*, 512 N.E.2d 1103, 1105 (Ind. 1987).

[17] In this case, the State presented evidence that Evans and his co-conspirators performed multiple acts in furtherance of the conspiracies. Numerous telephone calls were made and received among Evans, Wrisk, and the others, regarding the sale and quantity of the methamphetamine and heroin that they had sold and intended to sell. Evans coordinated the operations through telephone conversations and Facebook messaging with his fellow conspirators regarding the sale and delivery of the drugs.

[18] Wrisk concealed a large quantity of methamphetamine and heroin, scales, and the paraphernalia used in the drug sales. The ledgers that law enforcement officers seized revealed the names of the buyers and the amount of the drugs that were involved in each transaction.

[19] Evans's claim that the State relied exclusively on the statements made by the co-conspirators to prove that he committed the offenses is misplaced. He overlooks the evidence discussed above that pertained to the multiple acts taken in furtherance of the conspiracy to deal drugs. In short, the evidence sufficiently established that Evans participated in the conspiracy to sell methamphetamine and heroin, and we decline to set aside his convictions.

## II. Double Jeopardy

Evans argues that his convictions cannot stand because he was twice convicted of the "same offense" in violation of double jeopardy principles. *Appellant's Brief* at 20. Evans claims he was subjected to double jeopardy because "there is no factual basis distinguishing the two [offenses], other than the State has claimed different drug types and different weights of each drug." *Id.* Evans asserts in the alternative that double jeopardy occurred because his alleged acts constituted only one offense under the continuous crime doctrine.

Our Supreme Court recently reaffirmed the notion that "a primary purpose of the Double Jeopardy Clause is to preserve the finality of judgments." *Wadle v. State,* No. 19S-CR-340, *slip op. at* 9 (Ind. Aug. 18, 2020) (quoting *Crist v. Bretz,* 437 U.S. 28, 33 (1978)). By ensuring finality, this constitutional guarantee "shields against governmental harassment in that it bars the state from making repeated attempts to convict an accused for the same offense." *Id.* Whether a defendant is subjected to double jeopardy prohibitions is a question of law that this court reviews de novo. *Powell v. State,* No. 19S-CR-527, *slip op.* at 5 (Ind. Aug. 18, 2020); *A.M. v. State,* 134 N.E.3d 361, 364 (Ind. 2019).

The double jeopardy "statutory elements test" applies a comparative analysis of the statutory elements to determine whether two or more offenses are the "same." *Wadle, slip op.* at 9. This test, used by the federal judiciary, and articulated by the United States Supreme Court, provides that "where the same act or transaction" violates two distinct statutes, the question is whether each statute "requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304 (1932). If the answer to this question is "yes," the two

offenses are different; otherwise, the two offenses are the same. *Id.; see also Wadle, slip op.* at 9. The statutory elements test in Indiana generally tracks the federal *Blockburger* analysis. *Wadle, slip op.* at 11. The *Wadle* Court, however, recognized that this test, though relatively easy to apply, "offers little protection to criminal defendants: so long as one charged offense diverges from another charged offense based on a single element of proof, prosecutors can easily circumvent the test." *Id., slip op.* at 17.

[23] The *Wadle* Court then discussed the double jeopardy "actual evidence test" that was first articulated in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). This test looks to whether two or more offenses are the same "based on the evidence actually presented at trial, rather than engaging in a strict comparative analysis of the statutory elements." *Id.* at 9 (citing *Richardson,* 717 N.E.2d at 42 n.23). *Wadle* noted that the adoption of the statutory elements test and the actual evidence test "did little to reconcile decades of conflicting precedent," and that a "strict application of the actual-evidence test can . . . lead to illogical results. . . ." *Id.* at 11, 13. Hence, *Wadle* concluded that "what we're left with, then, is a patchwork of conflicting precedent, a jurisprudence of double jeopardy double talk." *Wadle, slip op.* at 16 (citing Akhil Reed Amar, *Double Jeopardy Law Made Simple,* 106 Yale L.J. 1807, 1807 (1997)). In the end, the *Wadle* Court expressly overruled the constitutional tests formulated in *Richardson* as they apply to claims of substantive double jeopardy. *Id.* at 17.

[24] As a result of overruling *Richardson,* the *Wadle* Court went on to determine the proper analytical framework for resolving state double jeopardy claims "going

forward." *Id.* at 22. *Wadle* first observed that substantive double jeopardy claims principally arise in one of two situations: (1) when a single criminal act or transaction violates a single statute but harms multiple victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims. *Id. at* 22-23. The Court then explained:

> When multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutes themselves. If either statute clearly permits multiple punishment, whether expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy. But if the statutory language is not clear, then a court must apply our included-offense statutes to determine whether the charged offenses are the same. *See* I.C § 35-31.5-2-168. If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy. But if one offense is included in the other (either inherently or as charged), then the court must examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial. If, based on these facts, the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," then the prosecutor may charge the offenses as alternative sanctions only. But if the defendant's actions prove otherwise, a court may convict on each charged offense.

*Id.* at 16. In either circumstance described above, the dispositive question is one of statutory intent. *See Paquette v. State,* 101 N.E.3d 234, 239 (Ind. 2018) (single statutory offense/multiple victims); *Emery v. State,* 717 N.E.2d 111, 112-13 (Ind. 1999) (multiple statutory offenses/single victim). If the defendant's criminal

acts are sufficiently distinct, then multiple convictions may stand; but if those acts are continuous and indistinguishable, a court may impose only a single conviction. *Armstead v. State,* 549 N.E.2d 400, 402 (Ind. Ct. App. 1990).

[25] Turning to the circumstances here, the thrust of Evans's double jeopardy claim is that his alleged participation in the conspiracies amounted to but a single act and, therefore, convictions on both counts were improper because only a single offense was committed. Notwithstanding Evans's contention that there was only one agreement that established only a single offense, the State was required to prove that Evans conspired to deliver at least ten grams of methamphetamine to establish the Level 2 methamphetamine dealing offense. I.C. § 35-48-4-1.1(a)(1)(A); I.C. § 35-48-4-1.1(e)(1); I.C. § 35-41-5-2. And to demonstrate that Evans committed conspiracy to deal in heroin, a Level 4 felony, the State was required to show that he conspired to deliver heroin in an amount between three and seven grams. I.C. § 35-48-4-1.1(a)(1)(C); I.C. § 35-48-4-1.1(c)(3); I.C.§ 35-41-5-2. Simply put, the dealing in methamphetamine charge had nothing to do with the heroin dealing charge. Each drug was peculiar to each count, the elements of each offense were different, *and* the State proved Evans's agreement with his co-conspirators to deal in *each* substance, *i.e.*, the proof of distinct criminal acts. *See Wadle*, *slip op.* at 16. As a result, there was no double jeopardy violation on this basis.

[26] We similarly reject Evans's alternative contention that his convictions violate double jeopardy principles under the "continuing crime doctrine." *Appellant's Brief* at 22. This rule "defines those instances where a defendant's conduct

amounts to only a single chargeable crime" and thus prevents the State from charging a defendant "twice for the same continuous offense." *Hines v. State,* 30 N.E.3d 1216, 1219 (Ind. 2015). The rule does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime. *Id.* It does not apply where, like here, there are separately chargeable offenses. *See id.* at 1220-21 (holding that the continuing crime doctrine did not apply where the defendant was convicted of confinement and battery and was "not convicted of multiple charges of criminal confinement, nor multiple charges of battery") (emphasis added).

[27] As discussed above, Evans was not charged with multiple conspiracies to deliver heroin; nor was he charged with multiple acts of conspiring to deal in methamphetamine. Rather, Evans was shown to have conspired to deliver each of the two different drugs as charged. In short, conspiracy to deal in methamphetamine and conspiracy to deal in heroin are two distinct chargeable crimes to which the continuous crime doctrine does not apply. Hence, there is no double jeopardy violation under this rule.

### III. Sentencing

[28] Evans claims that his sentence is inappropriate when considering the nature of the offense and his character. Evans argues that his sentence must be revised because "in no way did he personally injure a party, cause financial harm or other harm to any specific individuals." *Appellant's Brief* at 27.

[29]     Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Sentencing decisions rest within the discretion of the trial court and should receive considerable deference. *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State,* 29 N.E.3d 111, 122 (Ind. 2015).

[30]     The defendant bears the burden of demonstrating that the sentence is inappropriate under the standard, *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors in the record for such a determination. *Reis v. State,* 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). Ultimately, whether we regard a sentence as inappropriate at the "end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224.

[31]      We begin our analysis of the nature of the offense with the advisory sentence, which is the starting point selected by our legislature as an appropriate sentence for the crime committed. *Reis,* 88 N.E.3d at 1104. Evans was convicted of conspiracy to commit dealing in methamphetamine, a Level 2 felony, and

conspiracy to commit dealing in heroin, a Level 4 felony. The sentencing range for a Level 2 felony is ten to thirty years with an advisory sentence of seventeen-and-one-half years. Ind. Code § 35-50-2-4.5. And the range for a Level 4 felony is two years to twelve years with an advisory sentence of six years. *See* I.C. § 35-50-2-5.5 As noted above, the trial court sentenced Evans to thirty years on Count I and to twelve years on Count II. Evans was ordered to serve those sentences concurrently[1] for an aggregate sentence of forty-five years that included the fifteen-year enhancement on the habitual offender count. Under the sentencing statutes, the trial court could have sentenced Evans to additional time by ordering the sentences on both counts to run consecutively to each other.

[32] Although Evans maintains that his sentence should be reduced because the offenses were "not particularly egregious," *Appellant's Brief* at 26, the evidence shows that Evans orchestrated the drug dealing operations while he was incarcerated, and he was already facing other charges when he committed the instant offenses. And while the statute for the methamphetamine charge required an amount of methamphetamine in excess of ten grams, *see* I.C. § 35-48-4-1.1, there were over 220 grams of that drug involved here. Evans has failed to show that the nature of the offenses warrants a lesser sentence.

---

[1] Inasmuch as the trial court ordered the sentences in both counts to run concurrently with each other, Evans's inappropriate sentence argument focuses on the thirty-year sentence imposed on Count I.

[33] Next, we note that a defendant's life and conduct are illustrative of his or her character. *Morris v. State,* 114 N.E.3d at 539. An important factor in assessing character is a defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.*

[34] Evans has amassed juvenile adjudications, six felony convictions, and five misdemeanor convictions since 2004. Those convictions include battery, robbery, theft, and various drug dealing offenses. Evans also violated probation, has been disciplined while incarcerated, has violated parole on several occasions, and has been involved in gang activity.

[35] Although Evans has been granted parole and has been placed on probation in the past, he has shown continued disrespect for the rule of law and has continued to commit criminal offenses. That said, when considering the nature of Evans's offenses and his character, we are not persuaded that his sentence is inappropriate. Thus, we decline to disturb Evans's sentence.

[36] Judgment affirmed

Riley, J. and May, J., concur.